**BLEAKLEY PLATT & SCHMIDT, LLP**
**SUSAN E. GALVÃO (SEG-4026)**
**STEPHEN J. BROWN (SJB-4903)**
*Attorneys for Plaintiffs*
**One North Lexington Avenue**
**White Plains, New York 10601**
**Tel.: (914) 949-2700**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
BRIAN CHAN, CHRISTOPHER CABANILLA,
CHUN H. LIU, JOHN SCOTTO, DANIEL
VACCARO, DAVID CHEUNG, DOMINICK          Civil Action No. __17-cv-6473__
CELANO, PHILIP CELANO, EDWARD CHEUNG,
PETER CHEUNG, KENNY YEUNG, LOUIS DISTEFANO,
HELEN DOUGHERTY, JAROSLAW KUZNICKI, JOHN
GILMORE, JOSE A. DIAZ, KEVIN GRANDE,
KIEN LEE, LENNY CESARE, MAGDALENA
CABANILLA, ROBERT BUSH, MICHAEL
TALIERCIO, MICHAEL RADOVICH, DRAGAN
RADOVICH, PHILIP CESARE, PHILIP MARCHESE,
PHILIPPE CABANILLA, STEPHEN PETROGLIA,
TIM CHAN, TOMMY PENG, VICKI PENG, VICTOR
CHAMORRO, and VINCENT MUSTACCHIA,

                              Plaintiffs,

        - against-

BIG GEYSER, INC., LEWIS HERSHKOWITZ,
GERARD A. REDA, LYNN HERSHKOWITZ, STEVEN
HERSHKOWITZ, ERIC CELT, RON GENOVESE,
MIKE WODISKA, KAYTE MOONEY, and
DENNIS TOMPKINS,

                              Defendants.
-------------------------------------------------------------------X

## COMPLAINT

       Plaintiffs, by and through their attorneys, Bleakley Platt & Schmidt, LLP, for their

Complaint against the Defendants, Big Geyser, Inc. ("Big Geyser"), Lewis Hershkowitz, Gerard

Reda, Lynn Hershkowitz, Steven Hershkowitz, Eric Celt, Ron Genovese, Mike Wodiska, Kayte

Mooney, and Dennis Tompkins, specifically allege and state as follows:

## INTRODUCTION

1.      This action is brought by and on behalf of the above-named individual plaintiffs --

all of whom are current or former distributors of Big Geyser non-alcoholic beverage products to

various large and small retail and corporate accounts within the five boroughs of the City of New

York – as against beverage giant Big Geyser, Inc., and the above-named owners and members of

its upper management team, each jointly and severally and in their individual capacities

(collectively, "defendants").

2.      As described more fully in the pages that follow, Big Geyser supplies and

distributes non-alcoholic beverage brands throughout the five boroughs of New York City, as

well as throughout Westchester County, Putnam County, Nassau County, and Suffolk County.

According to Big Geyser's website, Big Geyser is "one of the largest distributors of premium

non-alcoholic beverages and snacks in the country," and it "represents some of the largest

beverage manufacturers in the world including Coca Cola Company, Nestle, Campbell's and

Monster Energy," among many others. *See* http://www.biggeyster.com/about-us/ (accessed July

31, 2017).

3.      Big Geyser's products include such well known beverages lines as Sparkling Ice,

Essential Water, Perrier, SunnyD, Monster Energy, SanPellegrino, Nesquick, Honest Tea, Core,

Silk, and many others.  Big Geyser also distributes products under its own label, specifically

Hal's New York Seltzer.   (The Hal's name refers to the late Irving "Hal" Hershkowitz, who

founded Big Geyser in 1986 and passed away in 2011.)

4.      Big Geyser's business model and long-term success depend upon the wide distribution and sale of its beverage products and brands to thousands of retail and corporate accounts in and about New York City and the surrounding counties.  To that end, Big Geyser dictates and controls virtually every detail and aspect of plaintiffs' day-to-day services and operations, scrutinizing and overseeing plaintiffs' work at every level of the distribution process, from training, sales, marketing, pricing, and delivery, to the stocking of shelves and product placement at each Big Geyser account.

5.      Plaintiffs' claims and damages in this action principally arise from, and seek redress for, defendants' intentional and longstanding misclassification of plaintiffs as "independent contractors," rather than "employees" of Big Geyser.  Plaintiffs also seek relief for defendants' other unlawful, heavy-handed, and oppressive policies and practices in violation of plaintiffs' statutory and common law rights – which policies and practices have severely and unconscionably undermined and obstructed plaintiffs' ability to earn a fair wage and support their families, despite their generating millions of dollars in profits for Big Geyser and its management team along the way.

6.      Plaintiffs seek, *inter alia,* to be recognized and reclassified as employees of Big Geyser, with all of the attendant rights and privileges of employees under applicable federal and state law, to enjoin defendants' unlawful practices going forward, and to recover from Big Geyser and the individual defendants all appropriate compensatory damages, including statutory liquidated and multiplied damages, for defendants' past and ongoing unlawful acts and omissions.

7.      In addition, plaintiffs seek to recover statutory and other damages arising from the unlawful and retaliatory actions undertaken by defendants, as against certain of the plaintiffs, in

response to and retribution for plaintiffs' individual and collective efforts to assert their rights and object to defendants' unlawful employment practices.  Finally, plaintiffs also seek the costs and expenses of this action, including their attorneys' fees, consistent with their statutory rights under federal and state law.

## JURISDICTION AND VENUE

8.      As detailed below, plaintiffs seek monetary damages and declaratory and injunctive relief pursuant to, *inter alia,* the Fair Labor Standards Act ("FLSA") (29 U.S.C. § 201, *et seq.*); the United States Department of Labor, Wage and Hour Division's Regulations Relating to Labor, Title 29, Subtitle B, Ch. V, *et seq.* ("Federal Wage Regulations"); the New York Labor Law ("NYLL"), Article 6 (Payment of Wages), Article 19 (Minimum Wage Act), and the Regulations promulgated thereunder; and the Declaratory Judgment Act (28 U.S.C. § 2201). Plaintiffs also seek related relief pursuant to the common law of the State of New York including rescission and relief from Big Geyser's fraudulent, illegal and illusory contracts of adhesion.[1]

9.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (the provisions of the general jurisdictional statute for "civil actions arising under the ... laws ... of the United States") and the Declaratory Judgment Act, 28 U.S.C. § 2201.  This Court has supplemental jurisdiction over the state claims arising pursuant to the statutory and common law of the State of New York, pursuant to 28 U.S.C. § 1367.

10.     Venue lies in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) and (d).  Defendant Big Geyser maintains its principal place of business within the State of New

---

[1]      In the unlikely event that plaintiffs are deemed not to be employees of defendants, plaintiffs seek alternative statutory relief pursuant to the New York Franchise Act, New York General Business Law ("NYGBL") Art. 33, and accompanying regulations governing franchises (Title 13 NYCRR Part 200).

York, and it conducts substantial business within this judicial district.  In addition, a substantial

part of the events giving rise to the claims asserted herein occurred within this judicial district.

### THE FACTS SUPPORTING RELIEF

**A.  Defendant Big Geyser, Inc.**

11.     Defendant Big Geyser, Inc., is an active domestic corporation, duly incorporated

and organized under the laws of the State of Delaware, with a principal place of business within

the State of New York, at 57-65 48th Street, Maspeth, New York 11378.  Big Geyser is an

"employer" within the meaning of the Fair Labor Standards Act (29 U.S.C. § 203), and NYLL §

190(3).

12.     As noted above, Big Geyser supplies and distributes popular and highly

recognizable beverage products throughout New York City and the surrounding counties.  Since

its founding approximately 30 years ago by Irving "Hal" Hershkowitz, Big Geyser has grown to

the point where it is one of the largest and most successful suppliers of non-alcoholic beverages

in the New York region.

13.     In implementing Big Geyser's business model, expanding its wide distribution

chain, improving its profitability and bottom line, and ultimately enriching its owners and

management team over the years, defendants have relied heavily on the plaintiffs, who market,

service and deliver Big Geyser products to the vast majority of Big Geyser's accounts in the New

York City market.  In short, Big Geyser's New York City market was built squarely on the backs

of the plaintiffs.

14.     Notwithstanding this, defendants have drawn a self-serving and artificial

distinction between the plaintiff distributors – who service and distribute products for Big Geyser

in the five boroughs of New York City – and all other Big Geyser employees who service and

distribute the *same* products to Big Geyser accounts *outside* of the City (i.e., in Westchester, Putnam, Suffolk, and Nassau Counties).

15.     Big Geyser properly classifies the latter individuals (servicing accounts outside of New York City) as "employees," with all attendant rights and privileges.

16.     In contrast, Big Geyser and the individual defendants have improperly misclassified plaintiffs as "independent contractors," rather than "employees."  As such, defendants have knowingly and intentionally deprived plaintiffs of all of the benefits, privileges and protections available to other Big Geyser employees.  In so doing, defendants have wrongfully disregarded and carefully avoided meeting their statutory and common law duties, as "employers," to plaintiffs, as "employees," including statutory wage and hour provisions, record-keeping requirements, employment taxes, workers compensation insurance, etc.

17.     As a further result of this intentional misclassification, plaintiffs have been improperly saddled by defendants with the significant costs and expenses of conducting Big Geyser's business and servicing the Big Geyser accounts in the five boroughs – including but not limited to the costs of acquiring and maintaining the route and trucks to service the route, paying tolls, purchasing mandated uniforms, paying refrigeration fees, attending and paying for company-mandated training sessions, marketing efforts, leasing sophisticated handheld devices and software required by the company, and many other expenses that have been improperly charged to plaintiffs by Big Geyser – notwithstanding that these expenses are incurred solely for Big Geyser's benefit, in the furtherance of its business model and its multi-million dollar commercial enterprise.

18.     All the while – and as more fully detailed in the pages that follow – defendants exercise a high degree of control and oversight of plaintiffs' activities, such that the use of the

term "independent contractors" in the Distributor Agreements is absolutely meaningless and absurd.  In fact, the reality just the opposite.  Defendants oversee and dictate virtually every aspect of the plaintiffs' working lives, down to the tiniest detail, from the Big Geyser warehouse in Maspeth, New York, to the store shelves at the Big Geyser accounts, and at every step in between.  Quite simply, plaintiffs are defendants' employees.

**B.  The Individual Defendants – Employers Under Federal and State Law**

19.     Defendant Lewis Hershkowitz is a natural person, the President and Chief Executive Officer ("CEO") and part-owner of Big Geyser, with an office and principal place of business in Maspeth, New York.  Mr. Hershkowitz is also an "employer" within the meaning of the Fair Labor Standards Act (29 U.S.C. § 203), and NYLL § 190(3).

20.     Defendant Gerard ("Jerry") Reda is a natural person and the Chief Operating Officer ("COO") of Big Geyser, with an office and principal place of business in Maspeth, New York.  Mr. Reda is also an "employer" within the meaning of the Fair Labor Standards Act (29 U.S.C. § 203), and NYLL § 190(3).

21.     Defendant Eric Celt is a natural person and the Chief Financial Officer ("CFO") of Big Geyser, with an office and principal place of business in Maspeth, New York.  Mr. Celt is also an "employer" within the meaning of the Fair Labor Standards Act (29 U.S.C. § 203), and NYLL § 190(3).

22.     Defendant Steven Hershkowitz is a natural person and the Vice President of Customer Service and part-owner of Big Geyser, with an office and principal place of business in Maspeth, New York.  Mr. Hershkowitz is also an "employer" within the meaning of the Fair Labor Standards Act (29 U.S.C. § 203), and NYLL § 190(3).

23.     Defendant Mike Wodiska is a natural person and the Vice President of the New York City Business Division of Big Geyser, with an office and principal place of business in Maspeth, New York.   Mr. Wodiska is also an "employer" within the meaning of the Fair Labor Standards Act (29 U.S.C. § 203), and NYLL § 190(3).

24.     Upon information and belief, defendant Lynn Hershkowitz is a natural person, the Big Geyser Vice President in charge of Accounts Receivable, and a part-owner of Big Geyser, with an office and principal place of business in Maspeth, New York.  Ms. Hershkowitz is also an "employer" within the meaning of the Fair Labor Standards Act (29 U.S.C. § 203), and NYLL § 190(3).

25.     Defendant Ron Genovese is a natural person and Big Geyser's Director of Sales for Manhattan, with an office and principal place of business in Maspeth, New York.  Mr. Genovese is also an "employer" within the meaning of the Fair Labor Standards Act (29 U.S.C. § 203), and NYLL § 190(3).

26.     Defendant Dennis Tompkins is a natural person and Big Geyser's Borough Manager of Manhattan, with an office and principal place of business in Maspeth, New York. Mr. Tompkins is also an "employer" within the meaning of the Fair Labor Standards Act (29 U.S.C. § 203), and NYLL § 190(3).

27.     Defendant Kayte Mooney is a natural person and Big Geyser's Borough Manager for Brooklyn and Staten Island, with an office and principal place of business in Maspeth, New York.  Ms. Mooney is also an "employer" within the meaning of the Fair Labor Standards Act (29 U.S.C. § 203), and NYLL § 190(3).

28.     Each of the above-named individual defendants possesses and regularly exercises significant control over Big Geyser's actual operations and affairs, in a manner that relates

directly to plaintiffs' employment – including but not limited to plaintiffs' workplace terms, conditions and operations, personnel decisions, supervision, discipline, and the rate and method of calculating their compensation, as well as deductions and set-offs against such compensation.

29.     Accordingly, each of the above-named individual defendants is an "employer" within the meaning of federal and state law, and each should therefore be held jointly and severally liable, along with Big Geyser, for the wrongs and substantial damages alleged herein.

**C.     The Plaintiffs**

30.     Plaintiff Victor Chamorro is an individual over the age of 18 years old and a resident of New York.  Mr. Chamorro has worked full-time as a Big Geyser employee from 2001 until present.  Mr. Chamorro personally services Big Geyser accounts under the name V&K Beverages Trading, Inc.  Mr. Chamorro signed a Big Geyser Distributor Agreement dated November 30, 2001.

31.     Plaintiff John Scotto is an individual over the age of 18 years old and a resident of New Jersey.  Mrs. Scotto has worked full-time as a Big Geyser distributor from 2012 until Big Geyser unilaterally refused to allow Mr. Scotto to roll his trucks in July 2017 and purportedly "suspended" his route.  Mr. Scotto is currently "suspended" by Big Geyser but has personally serviced Big Geyser accounts under the name Queens Boro Beverages Inc.  Mr. Scotto signed a Big Geyser Distributor Agreement dated March 1, 2013.

32.     Plaintiff Tim Chan is an individual over the age of 18 years old and a resident of New Jersey.  Mr. Chan has worked full-time as a Big Geyser distributor from 2009 until present. Mr. Chan personally services Big Geyser accounts under the name T&J Distributors, Inc.  He signed a Big Geyser Distributor Agreement on or about November 23, 2009.

33.     Plaintiff Kevin Grande is an individual over the age of 18 years old and a resident of New York.  Mr. Grande has worked full-time as a Big Geyser distributor from 2012 until present.  Mr. Grande personally services Big Geyser accounts under the name Midtown Muscle LLC.  He signed a Big Geyser Distributor Agreement on or about December 21, 2012.

34.     Plaintiff Jaroslaw Kuznicki is an individual over the age of 18 years old and a resident of New York.  Mr. Kuznicki has worked full-time as a Big Geyser distributor from 2000 until present.  Mr. Kuznicki personally services Big Geyser accounts under the name Cool Springs Corp.  He signed a Big Geyser Distributor Agreement on or about March 21, 2000.

35.     Plaintiff Brian Chan is an individual over the age of 18 years old and a resident of New York.  Mr. Chan has worked full-time as a Big Geyser distributor from 2013 until present.  Mr. Chan personally services Big Geyser accounts under the name Empire East Side Beverage Inc.  He signed a Big Geyser Distributor Agreement on or about August 29, 2013.

36.     Plaintiff Louis Distefano is an individual over the age of 18 years old and a resident of New York.  Mr. Distefano has worked full-time as a Big Geyser distributor from 2004 until present.  Mr. Distefano personally services Big Geyser accounts under the name Twisted Distributors, Inc.  He signed a Big Geyser Distributor Agreement on or about August 4, 2004.

37.     Plaintiff Helen Dougherty is an individual over the age of 18 years old and a resident of New York.  Ms. Dougherty has worked full-time as a Big Geyser distributor from 2004 until present.  Ms. Dougherty, like Mr. Distefano, personally services Big Geyser accounts under the name Twisted Distributors, Inc.

38.     Plaintiff Kenny Yeung is an individual over the age of 18 years old and a resident of New York.  Mr. Yeung has worked full-time as a Big Geyser distributor from 2005 until

present.  Mr. Yeung personally services Big Geyser accounts under the name E & K Beverage, Inc. a/k/a Bow Beverage Inc.  Upon information and belief, he signed a Big Geyser Distributor Agreement in or about 2005.

39.     Plaintiff Edward Cheung is an individual over the age of 18 years old and a resident of New York.  Mr. Cheung has worked full-time as a Big Geyser distributor from 2005 until present. Mr. Cheung personally services Big Geyser accounts under the name E & K Beverage, Inc. a/k/a Bow Beverage Inc.  Upon information and belief, he signed a Big Geyser Distributor Agreement in or about 2005.

40.     Plaintiff Tommy Peng is an individual over the age of 18 years old and a resident of New York.  Mr. Peng has worked full-time as a Big Geyser distributor from 2016 until present.  Mr. Peng personally services Big Geyser accounts under the name ATS Beverage, Inc.  He signed a Big Geyser Distributor Agreement on or about August 25, 2016.

41.     Plaintiff Vicki Peng is an individual over the age of 18 years old and a resident of New York.  Ms. Peng has worked full-time as a Big Geyser distributor from at least 2011 until present.  Ms. Peng personally services Big Geyser accounts under the name Circle Beverage, Inc.  She signed a Big Geyser Distributor Agreement in or about 2011 and 2016.

42.     Plaintiff David Cheung is an individual over the age of 18 years old and a resident of New York.  Mr. Cheung has worked full-time as a Big Geyser distributor from 2008 until present.  Mr. Cheung personally services Big Geyser accounts under the name Circle Beverage, Inc. (and formerly under DNV Beverage, Inc.).  He signed a Big Geyser Distributor Agreement in or about 2008 and 2016.

43.     Plaintiff Peter Cheung is an individual over the age of 18 years old and a resident of New York.  Mr. Cheung personally services Big Geyser accounts under the name DNV Beverage, Inc., since approximately July 2011 to the present.

44.     Plaintiff Robert Bush is an individual over the age of 18 years old and a resident of New York.  Mr. Bush has worked full-time as a Big Geyser distributor from 2009 until present.  Mr. Bush personally services Big Geyser accounts under the name Mari-B Beverage Corp.  He signed a Big Geyser Distributor Agreement in or about 2009.

45.     Plaintiff Jose A. Diaz is an individual over the age of 18 years old and a resident of New York.  Mr. Diaz has worked full-time as a Big Geyser distributor from 2010 until present.  Mr. Diaz personally services Big Geyser accounts under the name Daisy Beverage Corp.  He signed a Big Geyser Distributor Agreement on or about May 14, 2010.

46.     Plaintiff Philip Cesare is an individual over the age of 18 years old and a resident of New York.  Mr. Cesare has worked full-time as a Big Geyser distributor from 2016 until present.  Mr. Cesare personally services Big Geyser accounts under the name Boardwalk Beverage Inc.  He signed a Big Geyser Distributor Agreement on or about April 22, 2016.

47.     Plaintiff Stephen Petroglia is an individual over the age of 18 years old and a resident of New York.  Mr. Petroglia has worked full-time as a Big Geyser distributor from 2009 until present.  Mr. Petroglia personally services Big Geyser accounts under the name Beachstone Beverage, Inc.  He signed a Big Geyser Distributor Agreement on or about October 30, 2009.

48.     Plaintiff Magdalena Cabanilla is an individual over the age of 18 years old and a resident of New York.  Ms. Cabanilla has worked full-time as a Big Geyser distributor from 2013 until present.  Ms. Cabanilla personally services Big Geyser accounts under the name Thirsty City Beverage, Inc.  She signed a Big Geyser Distributor Agreement in or around 2013.

49.     Plaintiff Philippe Cabanilla is an individual over the age of 18 years old and a resident of New York.  Mr. Cabanilla has worked full-time as a Big Geyser distributor from 2010 until present.  Mr. Cabanilla personally services Big Geyser accounts under the names Cabanilla Corporation and Bella Vita Bev. Inc.  He signed Big Geyser Distributor Agreements in 2010 and 2013.

50.     Plaintiff Christopher Cabanilla is an individual over the age of 18 years old and a resident of New York.  Mr. Cabanilla has worked full-time as a Big Geyser distributor from 2012 until present.  Mr. Cabanilla personally services Big Geyser accounts under the name Bronx Bull Beverage LLC.  He signed a Big Geyser Distributor Agreement in or around 2012.

51.     Plaintiff Vincent Mustacchia is an individual over the age of 18 years old and a resident of New York.  Mr. Mustacchia has worked full-time as a Big Geyser distributor from 2007 until present.  Mr. Mustacchia personally services Big Geyser accounts under the name J&S Power Beverage, Inc.  He signed a Big Geyser Distributor Agreement in or around 2007.

52.     Plaintiff Michael Talierico is an individual over the age of 18 years old and a resident of New York.  Mr. Talierico has worked full-time as a Big Geyser distributor from 1998 until present.  Mr. Talierico personally services Big Geyser accounts under the name Matco Distributors, Inc.  He signed a Big Geyser Distributor Agreement in 1998 and also in 2004.

53.     Plaintiff Philip Marchese is an individual over the age of 18 years old and a resident of New Jersey.  Mr. Marchese has worked full-time as a Big Geyser distributor from 2012 until his unlawful termination on August 17, 2017 by Big Geyser in response to his involvement in the decision to pursue the instant lawsuit.  Mr. Marchese personally serviced Big Geyser accounts under the name VAM Beverage Corp.  He signed a Big Geyser Distributor Agreements dated November 20, 2012 and January 10, 2014.

54.     Plaintiff Lenny Cesare is an individual over the age of 18 years old and a resident of New Jersey.  Mr. Cesare worked full-time as a Big Geyser distributor from 2006 until June 2017, when Big Geyser terminated Mr. Cesare by means of a forced buy-out agreement.  Mr. Cesare personally serviced Big Geyser accounts under the name Family Beverage, Inc.  He signed a Big Geyser Distributor Agreement dated September 22, 2006.

55.     Plaintiff Chun H. Liu is an individual over the age of 18 years old and a resident of New Jersey.  Mr. Liu has worked full-time as a Big Geyser distributor from 2014 until present.  Mr. Liu personally services Big Geyser accounts under the name FYL Distributions, Inc.  He signed a Big Geyser Distributor Agreement dated February 28, 2014.

56.     Plaintiff Dragan Radovich is an individual over the age of 18 years old and a resident of New York.  Mr. Radovich has worked full-time as a Big Geyser distributor from 2005 until present.  Mr. Radovich personally services Big Geyser accounts under the name Greenway Distributing Corp.  He signed a Big Geyser Distributor Agreement dated May 25, 2005.

57.     Plaintiff Michael Radovich is an individual over the age of 18 years old and a resident of New York.  Mr. Radovich has worked full-time as a Big Geyser distributor from 2005 until present.  Along with his father, Dragan Radovich, Michael Radovich personally services Big Geyser accounts under the name Greenway Distributing Corp.

58.     Plaintiff John Gilmore is an individual over the age of 18 years old and a resident of New Jersey.  Mr. Gilmore has worked full-time as a Big Geyser distributor from 1997 until present.  Mr. Gilmore personally services Big Geyser accounts under the name One Drop Distributors, Inc.  He signed a Big Geyser Distributor Agreement dated March 11, 1997.

59.     Plaintiff Dominick Celano is an individual over the age of 18 years old and a resident of New York.  Mr. Celano has worked full-time as a Big Geyser distributor from 2013

until present. Mr. Celano personally services Big Geyser accounts under the name Blizzard

Beverage Corp. He signed a Big Geyser Distributor Agreement dated April 12, 2013.

60.     Plaintiff Phil Celano is an individual over the age of 18 years old and a resident of

New York. Mr. Celano has worked full-time as a Big Geyser distributor from 2013 until present.

Mr. Celano personally services Big Geyser accounts under the name Blizzard Beverage

Corp. He signed a Big Geyser Distributor Agreement dated April 12, 2013.

61.     Plaintiff Daniel Vaccaro is an individual over the age of 18 years old and a

resident of New York. Mr. Vaccaro has worked full-time as a Big Geyser distributor from 1999

until present. Mr. Vaccaro personally services Big Geyser accounts under the name Taste D

Beverage, Inc. He signed a Big Geyser Distributor Agreement dated October 12, 1999, and then

an Amended and Restated Distributor Agreement dated October 29, 2015, under pressure and

duress from Big Geyser.

62.     Plaintiff Kien Lee is an individual over the age of 18 years old and a resident of

New York. Mr. Lee has worked full-time as a Big Geyser distributor from 2005 until present.

Mr. Lee personally services Big Geyser accounts under the name Icon Beverage, Inc. He signed

a Big Geyser Distributor Agreement dated January 28, 2005.

63.     At all relevant times, each of the above-named plaintiffs was or is an "employee"

of Big Geyser and the individually named defendants, within the meaning and definition of that

term as provided in federal and state law. Each of the above-named plaintiffs services and

distributes Big Geyser products to Big Geyser retail and corporate accounts located within the

City of New York, and each works full-time (no less than forty hours per week and, in many

cases, substantially more than that) for defendants.

64.     None of the above-named plaintiffs could properly be described as exempt, nor do defendants encourage or permit plaintiffs to act upon or otherwise exercise independent judgment in the performance of their duties.

65.     Plaintiffs have each been improperly misclassified by defendants as "independent contractors" and, as such, each plaintiff has been systematically denied the minimum rights, benefits, and privileges afforded to employees of Big Geyser, pursuant to federal and state law, including but not limited to payment of a minimum wage and overtime wages.

66.     Each of the above-named plaintiffs has also been subjected to improper and illegal deductions from wages and/or illegal deductions by separate transactions, and otherwise has been improperly forced by defendants to bear the costs and expenses of performing their duties as employees of Big Geyser and defendants, in violation of applicable wage and hour, overtime, and anti-kickback provisions under the Fair Labor Standards Act and New York Labor Law.

67.     Thus, for example, defendants have forced plaintiffs to bear, and failed and refused to reimburse plaintiffs for, the following costs and expenses – all of which are incurred in furtherance of Big Geyser's business operations and at the direction of defendants, and not for the benefit of the individual plaintiffs:

      a.      costs relating to the lease or purchase and operation of vehicles required to perform work for Big Geyser, including the costs necessary to maintain, repair, and clean such vehicles;

      b.      expenses associated with meeting Big Geyser's specifications for placing decals on the vehicles displaying Big Geyser's products, telephone number, and address;

c.     costs relating to the purchase of insurance, including vehicle insurance, workers' compensation, and work accident insurance;

d.     costs relating to the purchase of uniforms adhering to Big Geyser's precise specifications;

e.     costs of hiring drivers and helpers and in some case merchandisers to facilitate distribution, delivery, and stocking customer shelves and Big Geyser-owned refrigeration units with Big Geysers products;

f.     "refrigeration," "security," and other fees and expenses associated with storage and handling of Big Geyser beverage products, which fees Big Geyser regularly charges each plaintiff;

g.     fees for periodic training sessions that defendants require plaintiffs to attend – including training called "Big Geyser University";

h.     the share of federal employment taxes for which employers are otherwise liable; and

i.     other costs normally associated with the operation of a business and included in Big Geyser's business, such as maps, logos and signs, electronic devices, and software.

68.     All of the above constitute unlawful deductions from wages, or deductions by separate transactions, and/or illegal kickbacks mandated as a condition of employment – in blatant violation of federal and state labor and employment laws.

**D.     The "Distributor Agreements" and the Realities of the Employer-Employee Relationship Between Defendants and Plaintiffs**

69.     As a condition of obtaining their employment, all but three of the above-named plaintiffs were required by defendants to form and/or use an existing single purpose legal entity

and to enter into a lengthy form contract entitled a "Distributor Agreement" – which was signed by each of these plaintiffs in his/her individual name and on behalf of the single purpose entity.[2]

70. As a condition of employment, these plaintiffs were also required by Big Geyser to "purchase" a distributorship route, comprised of Big Geyser retail accounts in and around the City of New York – as more fully identified in each of the plaintiffs' respective Distributor Agreements.

71. Upon the "purchase" of a route, defendants purportedly gave each plaintiff the "exclusive" right and privilege to service particular Big Geyser customer accounts, within a defined area in the City of New York, contingent upon plaintiffs' payment of the purchase price and their strict compliance with such terms and conditions of performance as are dictated by Big Geyser, alone. (Those detailed terms and conditions are set forth in the Distributor Agreements and in Big Geyer's "Distributors' Handbook," which is extremely comprehensive and is unilaterally amended from time to time at Big Geyser's sole discretion.)

72. The Distributor Agreements purport to define the relationship between Big Geyser and each plaintiff as being a relationship between a "supplier" and an "independent contractor." Yet, nothing could be further from the truth. The economic and practical reality is that plaintiffs are not "independent contractors" at all. Their daily work is performed under the constant supervision, control, and strict scrutiny of Big Geyser and the individually named defendant owners and members of its management team.

---

[2] Upon information and belief, the Distributor Agreements and Guaranties between each of the plaintiffs and Big Geyser are the same in all material respects, including all of the same basic terms and provisions, with only a few minor and insignificant differences. The date, time and place of execution of each plaintiff's Distributor Agreement, any amendments thereto, Promissory Note(s), and Guaranty, are all within the knowledge of Big Geyser, as each such document is maintained by Big Geyser in the regular course of business.

73.     Critically, in each instance, the Distributor Agreement requires that the individual plaintiffs *personally* devote their *full-time* energy and attention to serving the Big Geyser accounts and operating the distributorship routes.  The Agreements also expressly prohibit the individual plaintiffs from accepting or engaging in any other employment or occupation, and to work exclusively for Big Geyser at all times, and no other employer.

74.     In addition, the Agreements dictate that, if plaintiffs wish to take more than two consecutive days "off" from their work for Big Geyser, they must request such time off from Big Geyser, upon at least 30-days written notice – and Big Geyser retains the right to "approve or reject" the request for time off "in its sole discretion."

75.     Although plaintiffs each paid a heavy price for the "privilege" of servicing the Big Geyser routes, Big Geyser reserves to itself in the Distributor Agreements the virtually unfettered "right" to "buy-back" the route and/or terminate the relationship at any time, for any number of reasons (or no reason at all).

76.     The Agreements also contain broadly worded "non-competition" provisions that purport to restrict plaintiffs' right to obtain other employment *after* termination of the relationship with Big Geyser.

77.     They also include numerous "liquidated damage" and other heavy-handed penalty provisions which purportedly come into play in the event that Big Geyser determines that plaintiffs are not complying with the terms and conditions of the Distributor Agreements or the Handbook, as amended from time to time at Big Geyser's sole discretion.

78.     Defendants also required plaintiffs to personally guarantee all performance and obligations arising under the Distributor Agreement and/or the Handbook.  (Thus, plaintiffs are burdened with heavy personal liability and long-term financial exposure, in exchange for the

illusory "privilege" of performing sales and distribution services to the Big Geyser accounts within the five boroughs of New York City!)

79.     As noted, plaintiffs provided substantial financial consideration from their own funds or through promissory notes, in order to facilitate their Big Geyser route "purchases."  In virtually every (if not every) instance, plaintiffs' purchase of the Big Geyser route is supported by promissory notes payable to Big Geyser or a prior route owner, with substantial accruing interest (as high as 9% per annum) and backed by plaintiffs' personal guaranties.  Big Geyser also receives from the seller a $5,000 "fee" upon any transfer of a Big Geyser route.  Thus, defendants are profiting from their relationship with plaintiffs at every level – and yet they fail and refuse to even recognize them as employees.

80.     Defendants require plaintiffs to continue to make payments to Big Geyser upon these notes, with interest, even though many of the plaintiffs are struggling to make ends meet – given the incredibly thin margin defendants allow them to earn on their route sales.  To the extent that any plaintiff distributor fails to make such payments with interest, or gets behind in their monthly payments, defendants retain the right to (and do) take steps to hold them in default – with consequential penalties and, in some cases, forfeiture – or to restructure the loan provisions, so as to forebear upon collection, while increasing the indebtedness and the resulting financial pressures on the struggling plaintiffs.

81.     In structuring their business operations as they have, defendants have unfairly burdened plaintiffs with substantial costs and expenses which properly ought to be borne by Big Geyser.  Moreover, in extending "loans" at high interest rates to plaintiffs for the privilege of being employed, defendants have positioned themselves to gain at every level of the relationship,

all to plaintiffs' detriment and defendants' unjust enrichment – and all in violation of applicable federal and state labor and employment law.

82.     In short, plaintiffs have been forced to pay a high price for the illusory "privilege" of distributing Big Geyser products to Big Geyser accounts, upon such pricing terms and other heavy-handed conditions as are unilaterally dictated (and from time to time amended) by Big Geyser, at its sole discretion.[3]

83.     For some (if not all) of the plaintiffs, the "privilege" of owning and servicing a Big Geyser route has become an albatross around their necks!

**E.     The Misclassification of Plaintiffs as "Independent Contractors" – and the Many Indicia of the True Employer-Employee Relationship**

84.     As noted above, the adhesive Distributor Agreements – and the corresponding "purchase" of distributorship routes – were intentionally drafted and designed by Big Geyser and its owners and management team to mask, conceal, and subvert the true nature of the relationship between defendants and the plaintiff distributors – i.e., a relationship of employer and employee.

85.     Although each Distributor Agreement contains various statements and language purporting to classify plaintiffs as "independent contractors," this classification fails to account for the economic realities of the relationship.

86.     The following facts are indicative of the true nature of the employer-employee relationship, under federal and state law:

---

[3]     Like the Distributor Agreement, Big Geyser's "Handbook" contains terms and conditions that are patently inconsistent with federal and state labor law, relating to the terms and conditions of employment and payment of wages. Periodically, Big Geyser unilaterally issues amendments to its "Handbook," the terms of which Big Geyser deems to be binding upon and enforceable against each of the plaintiff distributors.  The Handbook provisions (and these unilateral amendments thereto) are likewise not subject to negotiation and are, in effect, unilaterally drafted adhesion contract provisions.

a.  The work of the plaintiffs in selling and distributing Big Geyser products to retail and corporate accounts in the five boroughs of New York City is completely integrated into, and essential to, the business of Big Geyser, such that Big Geyser's success depends significantly on plaintiffs' performance of services and distribution of product;

b.  Big Geyser requires each of the plaintiffs, in the performance of their duties, to adhere to Big Geyser's policies and procedures, as reflected in a "Handbook" (now entitled the "Independent Owners' Handbook," but formerly known as the "Big Geyser Distributors' Handbook"), the terms of which Big Geyser continually updates and revises, at its sole discretion;

c.  Defendants regularly threaten and impose heavy financial penalties and/or disciplinary actions upon plaintiffs for their perceived failure to comply with such policies, procedures, and directives;

d.  Plaintiffs' services are performed under defendants' direct substantial supervision and control, which is exercised on a daily basis, down to the most minute details of the plaintiffs' services;

e.  Defendants retain to the company, *inter alia,* the exclusive rights to approve or disapprove any vehicle used by plaintiffs to distribute products to the accounts on their routes, and to inspect plaintiffs' vehicles and drivers for compliance with company-promulgated signage and appearance standards;

f.  Defendants must approve or disapprove any driver or helper who assists the distributors in providing service to the Big Geyser accounts;

g.      Plaintiffs must store their trucks at the Big Geyser warehouse and daily check-out and check-in the trucks – with Big Geyser maintaining full control on how and when the trucks are allowed to leave the warehouse;

h.      Defendants require that plaintiffs and their drivers and helpers wear only Big Geyser uniforms when delivering products or servicing their accounts;

i.      Plaintiffs are required to purchase those uniform clothes through Big Geyser, at such times and upon such terms as demanded by Big Geyser, at plaintiffs' expense; and plaintiffs are subject to a $500 per day fine and having their trucks halted, in the event the uniforms are not worn;

j.      Plaintiffs are required to display Big Geyser's products, telephone number, and address prominently on their trucks at all times;

k.      Defendants require that plaintiffs have their trucks washed at regular intervals at a particular car wash identified by Big Geyser – for which service Big Geyser charges plaintiffs a regular fee;

l.      Plaintiffs must complete forms prepared by Big Geyser to service the accounts in their particular service areas, and avoid using any forms or paperwork other than that approved by Big Geyser;

m.      Plaintiffs are required to use handheld devices and software leased to them by Big Geyser, upon lease terms that are demanded by Big Geyser – which devices allow Big Geyser to keep track of all sales, deliveries and other transactions;

n.      Plaintiffs must use the company-provided handheld tablet to place all product orders and to generate invoices to the accounts using company-dictated

pricing – and defendants can and do monitor and penalize plaintiffs if they do not adhere to company-pricing or other invoicing requirements;

o. Plaintiffs can provide products and services only to those accounts approved by Big Geyser, and only in the particular service area approved by Big Geyser;

p. Plaintiffs must communicate all aspects of their transactions with the accounts directly to Big Geyser, at the times and in the manner dictated by Big Geyser;

q. Big Geyser tightly controls and limits the amount of money that plaintiffs can possibly earn as a result of their services:  Plaintiffs are permitted to charge only the prices fixed by Big Geyser for the products that they provide to their accounts, and must offer the deals and promotions exactly as dictated by Big Geyser.  Plaintiffs do not have discretion to charge higher prices, even if the market would bear those prices.  Consequently, while plaintiffs are forced to operate on razor-thin margins, Big Geyser and defendants are able to turn a profit on every case sold, and move more and more product into the market by capping the prices plaintiffs can charge the retail accounts;

r. Ironically, Big Geyser maximizes its own profits by selling these same products to third-parties outside the company distribution chain on better terms than they dictate to plaintiffs, resulting in a situation in which Big Geyser product is ultimately finding its way back into plaintiffs' account territories at better prices than plaintiffs can possibly afford to offer to their accounts, given the company's business model.  This practice, commonly referred to as "transshipping" has further undermined plaintiffs' ability to

make a living on the thin margins permitted by Big Geyser and the individual defendants. Defendants are patently unconcerned about plaintiffs' ability to earn a living wage, as long as Big Geyser is moving as much of its product as possible into the market;

s.      Plaintiffs are required to work full-time exclusively for Big Geyser and no other employer or occupation; and most of the plaintiffs have worked as distributors for Big Geyser exclusively over many years;

t.      Plaintiffs are required to spend a minimum of 8 to 10-hour days, 5 days a week or more, dedicated exclusively to their work for defendants (i.e., servicing Big Geyser accounts, attempting to identify new accounts for Big Geyser products, or otherwise marketing Big Geyser products);

u.      Defendants insist that plaintiffs must work on weekends, in addition to weekdays, to grow the Big Geyser business by visiting accounts, marketing Big Geyser products, and attempting to solicit new accounts;

v.      Plaintiffs may not offer to sell to their accounts the products or services of any other companies or suppliers, whether or not such products "compete" with Big Geyser products for shelf space;

w.      Plaintiffs are permitted to deliver and distribute only Big Geyser beverage products, and avoid using their own trucks or equipment to conduct any other business or service, even after they have serviced their Big Geyser routes for the day; if they do so, they are subject to severe penalties from defendants;

x.      The products are loaded onto the trucks by individuals employed by Big Geyser at Big Geyser's Maspeth, New York warehouse;

y.    Plaintiffs are required to participate in mandatory company meetings and training sessions, including technology and sales training (also known as "Big Geyser University") – with training fees charged to each of the plaintiffs by Big Geyser;

z.    Defendants assign (and can and do unilaterally remove) customer accounts to each distributor, including the right to require the plaintiffs to make deliveries for so-called "corporate accounts," at even smaller margins than usual;

aa.    Defendants determine what beverage products the plaintiffs may offer to their accounts and when and how they should be promoted;

bb.    Defendants regularly send sales persons and area service managers out to the plaintiffs' accounts and meet with the customers to gauge the level of plaintiffs' service and market product;

cc.    Defendants regularly "ride" with the plaintiffs and the plaintiffs' trucks on the deliveries and also insist that the plaintiffs allow supplier representatives to come along on deliveries at Big Geyser's election;

dd.    Defendants have the power to take any product line out of distribution at any time, without notice or corresponding compensation to plaintiffs, except as may be offered in Big Geyser's sole discretion – this, too, can dramatically (and negatively) impact the amount of money that plaintiffs can earn as a result of their services, as some products are more in demand than others;

ee.    Although plaintiffs have a proprietary interest in their trucks and in their "purchase" of their Big Geyser routes, the value and profitability of those interests are entirely dependent upon Big Geyser and the individual

defendants.  Moreover, given Big Geyser's tight control of pricing, routes, product lines, and the other details of plaintiffs' day-to-day activities, plaintiffs have no significant entrepreneurial opportunity for gain;

ff.   In addition to saddling plaintiffs with the "cost" of purchasing a Big Geyser route, Big Geyser also regularly (and illegally) shifts certain other capital costs and expenses to the plaintiffs, without providing them the independence or privilege to engage in entrepreneurial opportunities.  Indeed, plaintiffs are affirmatively prohibited by the company from engaging in outside business, and their acts and omissions on behalf of Big Geyser are carefully monitored and policed;

gg.   Big Geyser employs supervisors and managers who have direct supervisory responsibility over plaintiffs and assign and direct their work, in furtherance of Big Geyser's business operations;

hh.   Defendants routinely send these supervisors and managers to visit the accounts being serviced by plaintiffs to take photos and notes and to ascertain whether and to what extent they believe that plaintiffs are making sufficient sales and/or insisting upon proper product placement;

ii.   Following such inspections, defendants frequently follow up directly with plaintiffs through emails, identifying perceived problems or concerns, demanding additional effort or directing further action, and in many cases threatening draconian financial penalties, withholding of company-provided merchandising services, samples or promotional discounts essential to plaintiffs' ability to move product, and/or even termination of the relationship;

jj.   Although the Distributor Agreements purport to give plaintiffs proprietary control over their routes, defendants reserve the right to and do change the plaintiffs' routes from time to time without notice or compensation to plaintiffs; yet, defendants flatly prohibit plaintiffs from selling their routes or having other individuals perform in their place without the express prior approval of Big Geyser;

kk.   Defendants retain the right to terminate plaintiffs' services upon notice or whenever the company unilaterally determines that any provision of the contract or the Handbook has been "violated," amounting to the right to terminate at will;

ll.   Defendants retain the right to and do at times prevent a plaintiff distributor from running his or her truck on a given day and/or to take a plaintiff's vehicle out of service for perceived violations or non-compliance with the Distributor Agreement or Handbook terms – causing immediate, negative financial effects to plaintiffs;

mm.   Defendants can require plaintiffs to make deliveries and to perform service at the times and days requested by customers and/or demanded by Big Geyser; and

nn.   Defendants require purchase of minimum insurance, completion of specified paperwork, and compliance with many other rules and specifications determined by Big Geyser, in "its sole discretion".

87.   The true economic reality and status of plaintiffs as current or former employees of Big Geyser is amply demonstrated by these stringent, detailed, and comprehensive

requirements that Big Geyser and the individual defendants have consistently imposed on each of the plaintiffs, in the conduct of plaintiffs' day-to-day work for the company, throughout the period of their employment.

88.     Plaintiffs unquestionably perform functions that are an essential and significant part of Big Geyser's normal business operations, and they do so under the direct supervision and control of the defendants.   Despite this, plaintiffs have been arbitrarily denied access to the wages, benefits, and other privileges that Big Geyser provides to other Big Geyser employees.

**F.     Defendants Have Unlawfully Retaliated Against Plaintiffs in Response to Plaintiffs' Exercise of Rights**

89.     In June 2017, plaintiffs consulted with legal counsel regarding potential claims and legal remedies arising from Big Geyser's and the individual defendants' unlawful and heavy-handed treatment and misclassification of the plaintiffs as independent contractors.

90.     In early July, plaintiffs met with counsel at the law firm of Bleakley Platt & Schmidt, LLP, and shortly thereafter engaged counsel to represent their interests as against Big Geyser.

91.     Upon information and belief, defendants were specifically informed of or otherwise became aware of the fact that the plaintiffs intended to and then did consult with legal counsel in or around this same time.

92.     On July 21, 2017, counsel to plaintiffs wrote to Big Geyser, in a letter addressed to defendants Lewis Hershkowitz, Jerry Reda, Lynn Hershkowitz, Steven Hershkowitz, Eric Celt and Ron Genovese, and advised them that the plaintiffs (approximately 30 of Big Geyser's 35 New York City distributors) had engaged counsel to represent their legal interests relating to claims arising from violations by Big Geyser and its owners and managers of, *inter alia*, the Federal Fair Labor Standards Act and New York State Labor Law, relating to the

misclassification of the plaintiffs as independent contractors under the parties' Distributor Agreements and other policies and practices drafted and enforced by Big Geyser.

93.    In addition, the July 21, 2017, letter provided formal notice that the defendants were to place a litigation hold on all records and information relating to the plaintiffs' claims, and warned against any acts of recrimination or retaliation against the plaintiffs in response or reaction to the plaintiffs' efforts to seek redress under the law.

94.    Immediately upon receiving this notice, and despite the warning against retaliation, representatives of Big Geyser began reaching out to numerous distributors, including some of the plaintiffs herein, to inquire whether they are "involved" in the lawsuit and warned them that they had better not be involved.

95.    The implicit (if not explicit) intimidating and threatening message in such inquiries was that there would be severe repercussions for any such involvement, and that the plaintiffs should refrain from proceeding.  These communications were plainly designed to "root out" the perceived rabble-rousers and to have a chilling effect on the plaintiffs' lawful conduct and activity in protection of their own rights.

96.    Thereafter, defendants also took immediate and swift action to punish and retaliate against those individuals whom they perceived, or knew, to be the "lead" plaintiffs. Specifically, defendant Jerry Reda, Big Geyser's COO, turned his focus on plaintiff Philip Marchese, who has effectively acted as a lead plaintiff and had helped facilitate the plaintiffs' engagement of counsel.

97.    Shortly after receiving notice from plaintiffs' legal counsel that a lawsuit was imminent, Mr. Reda and defendant Kayte Mooney, Big Geyser's Brooklyn/Staten Island Borough Manager, met with Mr. Marchese, ostensibly to review his accounts.

98.     Upon information and belief, as soon as Big Geyser learned of the plaintiffs' collective efforts to organize and retain counsel to address Big Geyser's unlawful and oppressive acts and treatment of them, the individual defendants also began to scour and lean on its customers for information that it could use against the plaintiffs.  More specifically, and as an example only, Big Geyser sent its management representatives to multiple accounts that Mr. Marchese services and asked for any and all damaging information against Mr. Marchese, bad-mouthed Mr. Marchese, accused him of over-charging them for products, and advised the customers not to continue to do business with Mr. Marchese – despite the fact that he was and could only sell Big Geyser products to these customers!

99.     On July 27, 2017, following their meeting with Mr. Marchese, defendants Jerry Reda and Kayte Mooney sent an email to Mr. Marchese, with a detailed list of 12 "areas that require immediate improvement" and issued a "14-day violation" penalty as against Mr. Marchese.

100.     Ms. Mooney's email and defendants' imposition of the "14-day violation" penalty was a direct, impermissible, and pretextual response to Mr. Marchese's (and his fellow plaintiff distributors') efforts to obtain legal advice and seek redress for Big Geyser's ongoing violations of state and federal labor law.

101.     Under the so-called "14-day violation" penalty, defendants refused to extend discounts and promotions that are essential to every distributor's ability to make sales, and defendants refused to send the company merchandisers to Mr. Marchese's chain accounts (i.e., large supermarket accounts).  The merchandisers' support is needed to assist with large-scale deliveries of Big Geyser products, and the loss of their support immediately and irreparably harmed Mr. Marchese's ability to service the accounts and fulfill their orders for products.

102.    The effect of the "14-day violation" penalty, which Big Geyser well knew, was to prevent or severely impede Mr. Marchese from servicing his accounts and to irreparably damage (if not entirely destroy) his relationships with those accounts, going forward. The "14-day violation" penalty was clearly punitive, imposed in bad faith, and intended to drive Mr. Marchese out or cripple him in such a severe way that the other plaintiff distributors would be reluctant to proceed with the threatened lawsuit.

103.    Moreover, on July 26, 2017, Jerry Reda furthered the attack and retaliation against Mr. Marchese and the plaintiffs by sending an email to Big Geyser executives and the Big Geyser distributors (including all of the plaintiffs herein), denigrating and singling out Mr. Marchese and his services and accounts, and stating that Big Geyser needed to take action against "these poor performing route owners" who "are doing large amounts of damage to our business." Here, too, the aim was plainly to intimidate and chill the resolve of the other plaintiff distributors who had consulted with counsel about exercising their rights under federal and state law and seeking relief through the courts.

104.    In addition to the actions taken against Mr. Marchese, Big Geyser has also adversely and in a retaliatory manner changed the terms of the plaintiffs' employment by taking over certain accounts and routes without notice or explanation, suddenly requesting to meet in person with many of the plaintiff distributors, and making other arbitrary changes to the terms and conditions of some of the plaintiffs' jobs in recent weeks – for example, by directing at least one distributor to make deliveries despite the customer's refusal to pay for the product, contrary to normal course of business and practice.

105.    On August 3, 2017, Big Geyser formally notified Mr. Marchese and VAM Beverages, by letter, that Big Geyser had elected to proceed with a unilateral forced buy-out of

Mr. Marchese's route, pursuant to the terms of his Distributor Agreement. The letter identified a closing date of August 18, 2017, at Big Geyser's offices, and stated that the buy-out terms would follow. The next week, at the request of counsel to plaintiffs, Big Geyser provided a copy of the closing papers and the pricing and other terms for the buy-out transaction.

106.    Mr. Marchese, like many other of the plaintiffs, had financed the "purchase" of the route through Big Geyser, which loan is secured by two promissory notes to Big Geyser earning 9%, and with an approximate outstanding balance of $350,000.   Given the punitive, oppressive, and unfair manner in which defendants had been conducting business with the plaintiffs – and the recent retaliatory actions, including the 14-day violation – Mr. Marchese felt that a buy-out would at least mitigate his damages on a going forward basis. Thus, Mr. Marchese was willing to transfer the route to Big Geyser on market terms, with a full reservation of all other rights.

107.    Upon receiving the proposed termination agreement and terms of the buy-out from defendants, Mr. Marchese, through counsel, indicated that he would accept the pricing terms proposed by defendants, turn over the route, and provide appropriate paperwork and transactional documents at the August 18 closing, but he would *not* agree to the overly broad and patently improper waiver, general release, and covenant not to sue that Big Geyser sought to include in its proposed termination agreement.

108.    Just days later, on August 17, 2017, Big Geyser notified Mr. Marchese and counsel that, rather than proceeding with the buy-out as previously stated, Big Geyser had instead elected to terminate Mr. Marchese and VAM Beverages "for cause," stating that Big Geyser "was only willing to exercise its buy-back option if the parties released each other fully." (As demonstrated by this admission, Big Geyser was improperly and unlawfully seeking to

terminate Mr. Marchese and extract, through duress, a general release of his legal claims and rights and a covenant not to sue.)

109.    In other words, based upon Mr. Marchese's refusal to provide a waiver, general release, and covenant not to sue, Big Geyser purported to terminate Mr. Marchese and notified him that he is in default of his promissory notes and that Big Geyser would pursue him for all monies owed, interest and attorneys' fees, *etc*.

110.    These and other similar actions against the plaintiffs were undertaken with retaliatory animus and constitute unlawful attempts to punish or chill the plaintiffs' exercise of their federally and state-protected employment rights.

111.    Similarly, Big Geyser stopped plaintiff John Scotto from rolling his truck in June 2017, purportedly due to an outstanding balance for certain Big Geyser products, thereby improperly and unlawfully terminating him.  Since that time, Big Geyser has retained custody of Mr. Scotto's truck and has been running his route and servicing his accounts, leaving Mr. Scotto without adequate means to support his family (let alone to pay down the oppressive indebtedness that he was forced to incur in order to "purchase" the Big Geyser route in the first place).

112.    On behalf of Mr. Scotto, counsel contacted Big Geyser in early August 2017 to ascertain the company's position with respect to Mr. Scotto, who is now in financial duress due to Big Geyser's heavy-handed and oppressive terms.  Counsel also advised Big Geyser that Mr. Scotto desires to retrieve his truck from Big Geyser as soon as possible.

113.    On August 17, 2017, Big Geyser responded by letter, formally notifying Mr. Scotto, through his counsel, that his route was "suspended," that he was in default on his promissory note, and that Big Geyser had elected to accelerate the indebtedness and call the note. Big Geyser further stated that it would buy-out Mr. Scotto and thereby allow him to avoid the

negative consequences of the default on the indebtedness, *if but only if* he agrees to a full mutual release and waiver of claims as part of the Big Geyser buy-back agreement.

114.   Defendants plainly sought to take advantage of Mr. Scotto's financial predicament – which is the direct result of defendants' own unlawful and unconscionable acts and omissions towards Mr. Scotto and the other plaintiffs – to impermissibly extract from him a full release of claims and covenant not to sue.

115.   Both Mr. Marchese and Mr. Scotto have, through counsel, refused to proceed with a buy-out that is conditioned upon their provision of a general release and waiver of Big Geyser.

116.   Of course, defendants have no legal right to insist upon a broad release of claims as a condition of any proposed buy-out, and their efforts to extract such a release as a condition of a proposed "buy-out" are unconscionable, unfair, and contrary to federal and state labor law.

117.   In the meantime, defendants have taken over the accounts serviced by Mr. Marchese and Mr. Scotto without providing any monetary compensation to either of them.  Upon information and belief, Big Geyser is currently running their routes directly and retaining any and all profits attributable to those accounts.

## PLAINTIFFS' CLAIMS AGAINST EACH AND EVERY DEFENDANT

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT
### 29 U.S.C. § 201 *ET SEQ.*

118.   Plaintiffs hereby incorporate by reference paragraphs 1 through 117 above as if more fully set forth herein, and state the following claim for relief on behalf of all plaintiffs as against Big Geyser and each of the individual defendants, jointly and severally.

119.   At all relevant times, upon information and belief, defendants were and continue to be an employer engaged in interstate commerce and/or the production of goods for commerce

within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs are covered

individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

120.    Upon information and belief, at least within each of the three (3) most recent

years relevant to the allegations herein, Big Geyser had gross revenues in well in excess of

$500,000.

121.    Plaintiffs were entitled to be paid at the rate of time and one-half for all hours

worked in excess of the maximum hours provided for in the FLSA.

122.    Defendants failed to pay plaintiffs overtime compensation in the lawful amount

for all hours worked in excess of the maximum hours provided for in the FLSA.

123.    At all relevant times, defendants had, and continue to have a policy and practice

of refusing to pay overtime compensation at the statutory rate of time and one half to plaintiffs

for all hours worked in excess of forty (40) hours per work week, which violated and continues

to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 206(a), 207(a)(1) and

215(a).

124.    Defendants knowingly and willfully disregarded the provisions of the FLSA as

evidenced by their failure to compensate plaintiffs at the statutory overtime rate of time and one-

half for all hours worked in excess of forty (40) hours per week, when they knew or should have

known such was due and that non-payment of overtime compensation would financially injure

plaintiffs.

125.    As a result of the defendants' failure to properly record, report, credit and/or

compensate its employees, including plaintiffs, the defendants have failed to make, keep and

preserve records with respect to each of its employees sufficient to determine the wages, hours

and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201 *et seq.,* including 29 U.S.C. §§ 211(c) and 215(a).

126.    Defendants failed to properly disclose or apprise plaintiffs of their rights under the FLSA.

127.    As a direct and proximate result of defendants' violation of the FLSA, plaintiffs are entitled to liquidated damages pursuant to the FLSA.

128.    Due to the reckless, willful and unlawful acts of the defendants, plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime compensation, an equal amount as liquidated damages, pursuant to 29 U.S.C. §§ 206, 207, and 216(b).

129.    Plaintiffs are entitled to an award of their reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**FAILURE TO PAY OVERTIME WAGES
IN VIOLATION OF NYLL § 190 *ET SEQ.* AND 12 NYCRR § 142-2.2**

130.    Plaintiffs hereby incorporate by reference paragraphs 1 through 129 above as if more fully set forth herein, and state the following claim for relief on behalf of all plaintiffs as against Big Geyser and each of the individual defendants, jointly and severally.

131.    NYLL § 160 and 12 NYCRR § 142-2.2 require employers to compensate their employees at a rate not less than one and one-half times their regular rates of pay for any hours worked exceeding forty (40) in a workweek.

132.    Defendants are employers within the meaning of the NYLL and the NYCRR, while Plaintiffs are employees within the meaning of the NYLL and the NYCRR.

133.    Plaintiffs worked in excess of forty (40) hours in a workweek, yet defendants failed to compensate them in accordance with the NYLL's and the NYCRR's overtime provisions.

134.    Defendants willfully violated the NYLL and the NYCRR.

135.    Plaintiffs are entitled to their overtime pay for all hours worked per week in excess of forty (40) at the rate of one and one-half times their respective regular rates of pay.

136.    Plaintiffs are further entitled to liquidated damages, interest, and attorneys' fees for defendants' violations of the NYLL §§ 160, 190 *et seq.* and 12 NYCRR § 142-2.2.

## COUNT III

## FAILURE TO PAY MINIMUM WAGES
## IN VIOLATION OF NYLL § 190 *ET SEQ.* AND 12 NYCRR § 142-2.2

137.    Plaintiffs hereby incorporate by reference paragraphs 1 through 136 above as if more fully set forth herein, and state the following claim for relief on behalf of all plaintiffs as against Big Geyser and each of the individual defendants, jointly and severally.

138.    Defendant violated New York Labor Law § 190 *et seq.*, and 12 NYCRR § 142-2.2, in that they failed to pay plaintiffs for all time worked, including training time, and they wrongfully withheld other wages owed, such as final paychecks and vacation pay.

139.    At all relevant times, defendants were aware or should have known that they were required to pay plaintiffs minimum wages for the hours worked each week, without deduction for the costs and expenses associated with their performance of services on behalf of defendants.

140.    At all relevant times, defendants were aware or should have known that they were required to make such payments timely and on a regular basis, as they presumably did for their other employees.

141.   Defendants also failed and refused to contribute to workers' compensation and unemployment insurance programs and do not allow plaintiffs to apply or qualify for workers' compensation or unemployment benefits, although they are legally entitled to such benefits, as employees.

142.   Plaintiffs are entitled to damages equivalent to the wages, improper deductions from wages, and any employment benefits they should have received, but did not receive due to defendants' wrongful misclassification of plaintiffs as independent contractors rather than as employees.

143.   Plaintiffs are also entitled to statutory and liquidated damages for defendants' failure to pay minimum wages and their late payment of wages, pursuant to NYLL § 190 *et seq.*, and 12 NYCRR § 142-2.2.

## COUNT IV

### IMPROPER DEDUCTIONS FROM WAGES AND FAILURE TO REIMBURSE EXPENSES IN VIOLATION OF NYLL §§ 193, 198, 198-b

144.   Plaintiffs hereby incorporate by reference paragraphs 1 through 143 above as if more fully set forth herein, and state the following claim for relief on behalf of all plaintiffs as against Big Geyser and each of the individual defendants, jointly and severally.

145.   While acting pursuant to the directions and under the direct supervision and control of defendants and discharging their duties for and on behalf of the defendants, plaintiffs incurred work-related expenses, including but not limited to the purchase or lease, maintenance, operating costs and adornment of vehicles; insurance; communications equipment; handheld devices and software; "Big Geyser University" training and other training sessions mandated by

defendants; route "purchase" expenses; merchandising and marketing support costs; uniforms; refrigeration fees; and so-called security fees.

146.   Plaintiffs necessarily incurred these substantial expenses at the direction of defendants, as a direct result of performing their job duties for defendants, and in furtherance of defendants' business operations.

147.   Defendants have withheld these funds and unlawfully refused to reimburse plaintiffs without any lawfully sufficient reason or justification.

148.   Defendants have failed and refused to reimburse plaintiffs or otherwise indemnify plaintiffs as against these expenditures, as they are required to do by New York State Labor Law § 193.  As such, defendants have violated NYLL § 193(1) and (2).

149.   Moreover, in furtherance of their unconscionable and illegal scheme to avoid making such reimbursements, defendants have knowingly and intentionally inserted illegal contract provisions in their Distributor Agreements and the Big Geyser Handbook classifying plaintiffs as "independent contractors," rather than "employees," and purporting to hold plaintiffs contractually responsible for payment of these work-related expenses.

150.   In so doing, defendants have willfully and wrongfully managed to sidestep their legal duty to reimburse and indemnify plaintiffs, as employees, for these expenses and to provide other associated benefits to plaintiffs, as employees.

151.   By misclassifying the plaintiff employees and further by contractually requiring those employees to pay expenses incurred in the performance of their duties for defendants and/or at the direction for defendants, defendants have violated and continue to violate NYLL § 193 and 198-b relating to demands for "kick-back" of wages.

152.     Accordingly, plaintiffs are all entitled to recover from defendants the full amount of all wages that were improperly withheld, deducted, setoff, or otherwise unpaid as a result of defendants' illegal policies described above, pursuant to NYLL §§ 193, 198, 198-b.

153.     Moreover, inasmuch as defendants acted willfully in failing and refusing to meet its obligations to pay wages to plaintiffs, without making improper deductions, plaintiffs are also entitled to recover an additional amount of liquidated damages equal to one hundred percent (100%) of the total amount of the wages found to be due, under NYLL § 198(1-a).

154.     As a direct and proximate result of defendants' conduct, as alleged herein, plaintiffs have suffered and continue to suffer substantial losses, for which they are entitled to recover compensatory damages in an amount to be determined at trial, along with statutory liquidated damages referred to above, plus prejudgment interest, costs and the attorneys' fees incurred in the prosecution of this action, pursuant to NYLL § 198.

## COUNT V

### IMPROPER DEMANDS FOR "KICK-BACK" OF WAGES
### IN VIOLATION OF NYLL § 198-b

155.     Plaintiffs hereby incorporate by reference paragraphs 1 through 154 above as if more fully set forth herein, and state the following claim for relief on behalf of all plaintiffs as against Big Geyser and each of the individual defendants, jointly and severally.

156.     In order to procure and obtain employment with Big Geyser, defendants demanded that plaintiffs "purchase" a Big Geyser route by, among other things, executing Distributor Agreements, providing cash or other consideration in the form of promissory notes, transfer fees, and personal guarantees – all purportedly in exchange for the "exclusive" right and privilege of working for defendants, by servicing certain Big Geyser accounts, for the ultimate benefit of defendants.

157.     As described more fully above, the rights and privileges purportedly purchased are illusory, the Distributor Agreement is a contract of adhesion, and plaintiffs have been forced to bear the burdens and expenses of their employment, in a manner that is contrary to law and public policy.

158.     Under these circumstances, the consideration required by defendants from plaintiffs for the privilege of procuring and/or retaining employment constitutes an illegal "kick-back" of wages, prohibited by NYLL § 198-b.

159.     By misclassifying the plaintiff employees and by contractually requiring those employees to pay a "purchase price" to work, along with the expenses incurred in the performance of their duties of defendants and/or at the direction for defendants, defendants have violated and continue to violate NYLL § 198-b relating to demands for "kick-back" of wages.

160.     Accordingly, plaintiffs are all entitled to recover from defendants the full amount of all wages that were improperly withheld, deducted, setoff, or otherwise paid to "purchase" the Big Geyser routes, as a result of defendants' illegal policies described above, pursuant to NYLL §§ 193, 198(3), 198-b.

161.     Plaintiffs are also entitled to recover an additional amount of liquidated damages equal to one hundred percent (100%) of the total amount of the wages found to have been illegally extracted and thereby withheld from plaintiffs, pursuant to NYLL § 198(1-a).

## COUNT VI

### FAILURE TO PROVIDE NOTICES REQUIRED BY NYLL § 195(1)
### NYLL § 195(1) and (2), § 198(1-b) and (4)

162.     Plaintiffs hereby incorporate by reference paragraphs 1 through 161 above as if more fully set forth herein, and state the following claim for relief on behalf of all plaintiffs as against Big Geyser and each of the individual defendants, jointly and severally.

163.    Plaintiffs are employees, and each of the defendants is an employer, within the meaning of state and federal law.

164.    At the time that each plaintiff was hired to perform services for Big Geyser, defendants were required to provide them with a detailed written notice advising them of, *inter alia,* "the rate or rates of pay and basis thereof whether paid by the hour, shift, day, week, salary, piece, commission, or other…" as well as the regularly hourly rate and overtime rate of pay, for employees who are not exempt from overtime compensation.  NYLL § 195(1)(a).

165.    Plaintiffs are not exempt from overtime compensation.

166.    Defendants willfully failed to provide any of the plaintiffs with such notice, either at the date of their respective hires or at any time thereafter.

167.    Defendants were also required to notify plaintiffs in writing as to any changes to the information referenced above, at least seven (7) days in advance.  NYLL § 195(2).

168.    Over the course of plaintiffs' employment, defendants willfully failed to provide to plaintiffs with any such notice, despite making frequent, unilateral changes to the compensation structure under which plaintiffs were paid for their services – i.e., through unilateral amendments to the Handbook, fixing of maximum product prices, and additions to the fees and expenses that were charged to plaintiffs, among other things.

169.    As a result of the foregoing violations of NYLL § 195(1), each and every plaintiff is entitled to recover damages of fifty dollars ($50) for each work day that the violations occurred or continue to occur, up to five thousand dollars ($5,000) each, together with their costs and reasonable attorneys' fees.  NYLL § 198(1-b) and (4).

170.     Plaintiffs are also entitled to an award other relief, including injunctive and declaratory relief, that the court in its discretion deems necessary or appropriate to prevent defendants from persisting in these violations.  NYLL § 198(1-b) and (4).

## COUNT VII

### FAILURE TO PROVIDE NOTICES REQUIRED BY NYLL § 195(3)
### NYLL § 195(3), § 198(1-d) and (4)

171.     Plaintiffs hereby incorporate by reference paragraphs 1 through 170 above as if more fully set forth herein, and state the following claim for relief on behalf of all plaintiffs as against Big Geyser and each of the individual defendants, jointly and severally.

172.     Defendants were also required to provide plaintiffs with written wage statements with every payment of wages, setting forth the detailed and specific information required by NYLL § 195(3).

173.     Over the course of plaintiffs' employment, defendants willfully failed to provide to plaintiffs with any such wage statements.

174.     As a result of the foregoing violation of NYLL § 195(3), each and every plaintiff is entitled to recover damages of two hundred fifty dollars ($250) for each work day that the violations occurred or continue to occur, up to five thousand dollars ($5,000) each, together with their costs and reasonable attorneys' fees. NYLL § 198(1-d) and (4).

175.     Plaintiffs are also entitled to other relief, including injunctive and declaratory relief, that the court in its discretion deems necessary or appropriate to prevent defendants from persisting in these violations in the future.  NYLL § 198(1-d) and (4).

## COUNT VIII

### FAILURE TO PAY SPREAD OF HOUR WAGES
### IN VIOLATION OF NYLL § 650 *ET SEQ.* AND 12 NYCRR § 142-2.4

176.   Plaintiffs hereby incorporate by reference paragraphs 1 through 175 above as if more fully set forth herein, and state the following claim for relief on behalf of all plaintiffs as against Big Geyser and each of the individual defendants, jointly and severally.

177.   Defendants employed plaintiffs within the meaning of New York Labor Law §§ 2 and 651.

178.   Defendants knowingly and willfully violated the rights of plaintiffs by failing to pay plaintiffs overtime compensation at the rate of time and one-half for each hour worked in excess of forty (40) hours in a workweek.

179.   Employers are required to pay a "spread of hours" premium of one (1) additional hour's pay at the statutory minimum hourly wage rate for each day where the spread of hours in an employee's workday exceeds ten (10) hours. 12 NYCRR § 142-2.4

180.   Defendants knowingly and willfully violated the rights of plaintiffs by failing to pay a "spread of hours" premium to plaintiffs for each day they worked in excess of ten (10) hours pursuant to New York State Department of Labor Regulations.

181.   Defendants also failed to properly disclose or apprise plaintiffs of their rights under the New York Labor Law.

182.   Due to the defendants' New York Labor Law violations, plaintiffs are entitled to recover from defendants their unpaid overtime compensation and unpaid "spread of hours" premium, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to New York Labor Law §§ 198, 663(1).

183.   Plaintiffs are also entitled to liquidated damages pursuant to New York Labor Law § 663(1), as well as civil penalties and/or liquidated damages pursuant to the New York State Wage Theft Prevention Act.

## COUNT IX

### FAILURE TO MAINTAIN AND PRESERVE
### CONTEMPORANEOUS WAGE AND HOUR RECORDS
### IN VIOLATION OF NEW YORK LABOR LAW §§ 195, 661

184.   Plaintiffs hereby incorporate by reference paragraphs 1 through 183 above as if more fully set forth herein, and state the following claim for relief on behalf of all plaintiffs as against Big Geyser and each of the individual defendants, jointly and severally.

185.   At all relevant times, defendants willfully failed to make, keep, maintain and preserve accurate contemporaneous records with respect to plaintiffs, sufficient to determine their proper wages, hours worked, entitlement to overtime pay, benefits, and other conditions and terms of their employment, as they required to do by NYLL §§ 195(4) and 661.

186.   At all relevant times, defendants acted willfully in failing to maintain and keep such records and in failing to pay plaintiffs minimum wages and overtime wages.

187.   Defendants' failure to accurately make, keep, maintain, and preserve such records with respect to plaintiffs is in violation of NYLL §§ 195(4) and 661, for which plaintiffs are entitled to recover damages and statutory penalties pursuant to NYLL §§ 198 and 663.

## COUNT X

### RETALIATION IN VIOLATION OF THE
### FAIR LABOR STANDARDS ACT, 29 U.S.C. §§ 215(a)(3) AND 218(c)

188.    Plaintiffs hereby incorporate by reference paragraphs 1 through 187 above as if more fully set forth herein, and state the following claim for relief on behalf of all plaintiffs as against Big Geyser and each of the individual defendants, jointly and severally.

189.    Plaintiffs have taken steps and efforts to obtain legal advice and seek redress for Big Geyser's ongoing violations of both state and federal law.

190.    Plaintiffs have notified defendants of their intent to seek legal redress for Big Geyser's violations under the FSLA and NYLL and defendants are aware and have been made aware of plaintiffs' efforts to protect their interests and assert their claims.

191.    Plaintiffs' actions were protected acts and activities under the FLSA, 29 U.S.C. § 215(a).

192.    In response to the plaintiffs' protected activities, defendants have unlawfully retaliated and targeted the plaintiffs and imposed draconian and oppressive adverse employment actions and have terminated several plaintiffs and otherwise subjected plaintiffs to hostile and retaliatory acts, threats, and penalties.

193.    Based upon the foregoing, plaintiffs are entitled to recover from defendants, *inter alia*, statutory damages, attorneys' fees, interest, statutory liquidated damages in an amount equal to 100% of their actual damages, as well as injunctive relief pursuant to 29 U.S.C. §§ 215(a)(3), 216(b) and 218c.

## COUNT XI

### RETALIATION IN VIOLATION OF NYLL § 215

194.    Plaintiffs hereby incorporate by reference paragraphs 1 through 193 above as if more fully set forth herein, and state the following claim for relief on behalf of all plaintiffs as against Big Geyser and each of the individual defendants, jointly and severally.

195.    Plaintiffs' actions as described above likewise constitute protected acts under NYLL.

196.    In response to the plaintiffs' protected activities, defendants have unlawfully retaliated and targeted the plaintiffs and imposed draconian and oppressive adverse employment actions and have terminated several plaintiffs and otherwise subjected plaintiffs to hostile and retaliatory acts, threats, and penalties.

197.    Based upon the foregoing, plaintiffs are entitled to recover from defendants, *inter alia*, statutory damages, attorneys' fees, interest, statutory liquidated damages in an amount equal to $20,000 per violation, as well as injunctive relief pursuant to NYLL § 215.

## COUNT XII

### COMMON LAW FRAUD AND RESCISSION

198.    Plaintiffs hereby incorporate by reference paragraphs 1 through 197 above as if more fully set forth herein, and state the following claim for relief on behalf of all plaintiffs as against Big Geyser and each of the individual defendants, jointly and severally.

199.    Despite the terms of the Distributor Agreements, as drafted exclusively by Big Geyser, plaintiffs' relationship with Big Geyser satisfies every aspect of the test for employment, and not for independent contractor status.

200.   At all relevant times, defendants knew that the "independent contractor" classification in the Distributor Agreements was and is improper and inaccurate and that, in fact, plaintiffs were and are "employees" entitled to the benefits and protections of all laws enacted for the benefit and protection of employees.

201.   Defendants took advantage of the parties' lack of sophistication and their unequal bargaining power and intentionally misled plaintiffs as to their employment status, by advising them that they are not employees, but are independent contractors with the power and prospect to act independently, exercise independent judgment, and profit accordingly.  This was not true, and defendants intended to and in fact do supervise, control, and dictate every aspect of plaintiffs' services.

202.   Upon information and belief, defendants misrepresented and concealed the facts from plaintiffs, in order to induce plaintiffs to enter into the Distributor Agreements and to perform services for defendants, and in order to induce plaintiffs to assume responsibility for paying the substantial employment-related expenses that were incurred for defendants' benefit and properly chargeable to defendants.

203.   At all relevant times, defendants intended to and actually did induce plaintiffs to reasonably and justifiably rely upon defendants' false and fraudulent representations concerning their employment status and their responsibility for the employment-related expenses.

204.   Furthermore, defendants' insistence that the plaintiffs "purchase" a Big Geyser route, upon the onerous and one-sided terms and conditions imposed by defendants – including the promissory notes and unconditional personal guarantees illegally extracted from plaintiffs by defendants as supposed "consideration" for the privilege of being employed by defendants – was

also intentionally deceptive and inconsistent with federal and state labor law relating to the terms and conditions of employment and the payment of wages.

205.    Defendants' mischaracterization of their distributors as independent contractors, their concealment and/or non-disclosure of the true nature of the relationship between defendants and plaintiffs, and the attendant deprivation of substantial rights and benefits of employment are part of an on-going unlawful, deceptive business practice by defendants.

206.    The Distributor Agreements are and at all relevant times have been contracts of adhesion, drafted exclusively by Big Geyser and/or its legal counsel, with no negotiation with distributor plaintiffs, who were required to sign the Agreement as a condition of employment. Plaintiffs were required to sign the form contracts "as is," without any changes made to the terms contained therein.

207.    The terms and conditions of the Distributor Agreements are not only adhesive and unconscionable, they are also inconsistent with federal and state labor law governing the terms and conditions of employment and payment of wages.

208.    Accordingly, the Distributor Agreements are against public policy, unconscionable, and thus unenforceable against the individual plaintiffs.

209.    As a direct and proximate result of defendants' fraudulent misrepresentations, as alleged herein, plaintiffs have suffered and continue to suffer substantial damages, for which they are entitled to recover compensatory damages in an amount to be determined at trial.

## COUNT XIII

### UNJUST ENRICHMENT UNDER NEW YORK LAW

210.    Plaintiffs hereby incorporate by reference paragraphs 1 through 209 above as if more fully set forth herein, and state the following claim for relief on behalf of all plaintiffs as against Big Geyser and each of the individual defendants, jointly and severally.

211.    As a result of defendants' conduct in misclassifying plaintiffs as independent contractors, defendants have forced plaintiffs to bear the normal costs and incidents of Big Geyser's business and have thus unjustly enriched themselves, to the detriment of plaintiffs, in violation of the common law of New York State.

212.    As a direct and proximate result of defendants' conduct, Big Geyser has received substantial benefits to which it had no entitlement, at plaintiffs' expense, including but not limited to increased profits, decreased employment taxes, decreased premiums for workers' compensation and disability benefits, fewer business expenses, and the like.

213.    As a direct and proximate result of defendants' conduct, as alleged herein, plaintiffs have suffered and continue to suffer substantial losses, for which they are entitled to recover compensatory damages in an amount to be determined at trial.

## COUNT XIV

### DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201

214.    Plaintiffs hereby incorporate by reference paragraphs 1 through 213 above as if more fully set forth herein, and state the following claim for relief on behalf of all plaintiffs as against Big Geyser and each of the individual defendants, jointly and severally.

215.    Despite defendants' control over virtually all material aspects of the employment relationship, and despite the unequivocal command of applicable statutes and case law to the

effect that workers such as plaintiffs are entitled to the protections due employees under federal and New York State law, defendant continue to misclassify its drivers as independent contractors.  As a result, these drivers are deprived of the rights and protections guaranteed by federal and state law to employees, and they are deprived of employer-financed workers' compensation coverage and unemployment insurance benefits.

216.    An actual controversy has arisen between the plaintiffs and defendants relating to the following matters:

a.    Whether defendants have unlawfully misclassified plaintiffs as independent contractors, and have thus denied plaintiffs of the benefits of employee status, such as:

1.  Health benefits;

2.  Pension benefits;

3.  Life insurance; and

4.  Disability insurance.

b.    What amounts plaintiffs are entitled to receive in compensation and benefits.

c.    What amounts plaintiffs are entitled to receive in interest on unpaid benefits due and owing.

d.    What amounts plaintiffs are entitled to receive from defendants in statutory penalties and interest.

217.    Pursuant to 28 U.S.C. § 2201, this Court should issue a declaratory judgment establishing that plaintiffs are or were employees of Big Geyser and that plaintiffs are or were therefore entitled to all the rights and benefits of employment pursuant to the laws of the United States and of New York.

218.   Plaintiffs therefore seek entry of a declaratory judgment in their favor which declares defendants' practices as heretofore alleged to be unlawful and which provides for recovery of all sums determined by this Court to be owed by defendants to the plaintiffs.

## COUNT XV

### VIOLATIONS OF NEW YORK FRANCHISE ACT
### (NYGBL Article 33 and 13 NYCRR Part 200)

219.   Plaintiffs hereby incorporate by reference paragraphs 1 through 218 above as if more fully set forth herein, and state the following claim for relief on behalf of all plaintiffs as against Big Geyser and each of the individual defendants, jointly and severally.

220.   In the event that plaintiffs are not deemed to be employees of defendants, then at the very least plaintiffs' purchase of distributorship routes constitute the purchase of "franchises," within the meaning of the FTC Franchise Rule, 16 CFR Parts 436, 437m and Section 681 of New York's Franchise Act (NYGBL Article 33).

221.   Pursuant to the Distributor Agreements, plaintiffs were purportedly granted the right to engage in the business of offering, selling, or distributing goods or services under Big Geyser's marketing plan or system, which is prescribed in substantial part by Big Geyser.

222.   The Distributor Agreements also granted plaintiffs the right to engage in the business of offering, selling, or distributing goods or services that are substantially associated with Big Geyser's trademark, service mark, trade name, logotype, or advertising.

223.   Moreover, plaintiffs were required to provide a "franchise fee," in the form of the purchase price of the route.  NYGBL § 681(7).

224.   Thus, if not employees, plaintiffs must at least be treated as "franchisees," entitled to the protections and remedies available under New York's Franchise Act (NY GBL Article 33).

225.   If not an employer of plaintiffs, Big Geyser must at least be deemed a "franchisor," within the meaning of NYGBL § 681(3), (4), and (5).

226.   Upon information and belief, contrary to the express requirements of the Franchise Act, defendants have never filed an offering prospectus with the department of law in New York State, nor did they ever file a registration on forms prescribed by the department, nor did they provide plaintiffs with any of the detailed disclosures and accompanying documents required by GBL § 683(1) through (7), either before plaintiffs' acquisition of their respective Big Geyser routes through execution of the Distributor Agreements, or at any time thereafter.

227.   Upon changing the terms and conditions of their relationship with plaintiffs, defendants likewise failed to provide or file with the department of law or to provide to plaintiffs any advance or even contemporaneous notice of such changes or amendments, as they were required to do pursuant to GBL § 683(9).

228.   Defendants offered to sell and did sell the Big Geyser franchises to plaintiffs in a manner that wholly disregarded and failed to comply with the formal registration, disclosure, and offering requirements set forth in the Franchise Act, including GLB § 683 (1) through (7), (11) and (13) – and such failures continue to date.

229.   Defendants also have wholly failed to comply with the recordkeeping, accounting, and filing requirements set forth in § 683(14) – and such failure continues to date.

230.   Defendants are not exempt from the requirements of the Franchise Act under GBL § 684.

231.    In failing to comply with any of the minimum requirements of the Franchise Act, and entering into Distributor Agreements that were and continue to be illusory, adhesive, unprofitable, and unduly burdensome on plaintiffs, defendants employed – and continue to date to employ – a "device, scheme, or artifice to defraud" plaintiffs.  GBL § 687(2)(a) and (c).

232.    In conspicuously failing to disclose or recognize the true nature of the transactions as the sale of a franchise subject to the Franchise Act, defendants have also willfully, deceptively, and fraudulently misrepresented and concealed their duties and obligations under the Franchise Act and plaintiffs' corresponding rights and remedies.  Their fraudulent misrepresentations and deceptive practices continue to date.

233.    Moreover, in conducting their business operations in the manner described herein, so as to burden plaintiffs with the heavy costs and expenses of performing services for Big Geyser, while unduly restricting, limiting, and controlling plaintiffs' ability to act independently to earn a profit and maximize the returns on their franchise investments, defendants engaged and continue to engage in an "act, practice, or course of business which operates as a fraud or deceit" upon plaintiffs, in violation of GBL § 687(2)(a) and (c).

234.    Finally, in demanding that Mr. Marchese and Mr. Scotto execute general releases and waivers as a condition of their franchise "buy-outs," defendants also violated GBL § 687(5).

235.    Big Geyser and the individually named defendants are jointly and severally liable for the above-referenced violations of the Franchise Act, under GBL § 691(3), inasmuch as each of the individually named defendants is a principal, officer, or director of Big Geyser (or performs similar functions), and each materially aided in the acts or transactions constituting the violations.

236.    As a result of defendants' willful and material violations of the Franchise Act, many of which are ongoing, plaintiffs are entitled to recover their actual damages and to rescind their purchases of the Big Geyser franchises, so as recover the amounts paid for the franchises, plus interest at 6%. Plaintiffs are also entitled to recover their attorneys' fees and court costs. GBL § 691(1).

## RELIEF REQUESTED

WHEREFORE, plaintiffs pray for judgment against defendants, jointly and severally, as follows:

a.    Actual compensatory damages to plaintiffs to the full extent permitted by law;

b.    A judgment in favor of plaintiffs for all statutory penalties and liquidated damages allowed by law;

c.    Award of prejudgment interest to plaintiffs;

d.    Rescinding the Distributor Agreements, Promissory Notes and Guarantees, and awarding restitution compensating plaintiffs for the amounts they paid for the illusory Distributor Agreements and for the reasonable value of the benefits provided by plaintiffs to defendants;

e.    Declaring that the defendants' acts described in this Complaint constitute violations of the New York Labor Law and New York common law and the federal Fair Labor Standards Act or, alternatively, the New York Franchise Act;

f.    An order enjoining the defendants from any and all further retaliatory acts and penalties as taken against the plaintiffs;

g.    Award of punitive damages in an amount to be determined at trial;

h.    Attorneys' fees and costs as provided by law; and

i.    Such other further relief as the Court may deem just and equitable.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a jury trial on all issues so triable.

Dated: White Plains, New York
       August 24, 2017

BLEAKLEY PLATT & SCHMIDT, LLP

By:    _____

       SUSAN E. GALVÃO (SEG-4026)
       STEPHEN J. BROWN (SJB-4903)
*Attorneys for Plaintiffs*
ONE NORTH LEXINGTON AVENUE
WHITE PLAINS, NY 10601
Tel. No.: (914) 949-2700