UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- x
BRIAN CHAN, ET AL.,

                Plaintiffs,

    -against-

BIG GEYSER, INC., ET AL.,

                Defendants.

**1:17-CV-06473 (ALC)**
**OPINION AND ORDER**

------------------------------------------------------- x

**ANDREW L. CARTER, JR., United States District Judge:**

    Plaintiffs, thirty-three[1] current or former distributors of Big Geyser non-alcoholic beverage products ("products") in the five boroughs of New York City, contend that Big Geyser and its employees ("Defendants") have engaged in numerous violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Defendants move to dismiss this action in part, contending that Plaintiffs have variously failed to meet statutory requirements, seek relief under statutes that lack private rights of action, and present claims that are time-barred. For the reasons that follow, Defendants' motion is GRANTED in part and DENIED in part.

## BACKGROUND

**I.    Factual Background**

---

[1] Plaintiff Jaroslaw Kuznicki settled his claims on July 2, 2018. ECF No. 165. Accordingly, thirty-two Plaintiffs remain.

1

The following facts are taken from Plaintiffs' First Amended Complaint ("FAC") and are presumed true for the purposes of this motion to dismiss.

Big Geyser is a corporation that supplies and distributes popular beverage products throughout New York City's five boroughs, as well as in Westchester, Putnam, Nassau, and Suffolk counties. FAC ¶¶ 2, 12. It is now one of the largest and most successful suppliers of non-alcoholic beverages in the New York region. *Id.* ¶ 12.

Defendant Lewis Hershkowitz is the President and Chief Executive Officer ("CEO") and part-owner of Big Geyser. *Id.* ¶ 19. Defendant Gerard ("Jerry") Reda is Big Geyser's Chief Operating Officer ("COO"). *Id.* ¶ 20. Reda is the face of Big Geyser and directly oversees and supervises the Company's day-to-day operations. *Id.* ¶ 21. Defendant Eric Celt is the Chief Financial Officer ("CFO") of Big Geyser. *Id.* ¶ 23. Defendant Steven Hershkowitz is Big Geyser's Vice President of Customer Service and part-owner of Big Geyser. *Id.* ¶ 24. Defendant Mike Wodiska is the Vice President of Big Geyser's New York City Business Division. *Id.* ¶ 25. Defendant Ron Genovese is Big Geyser's Director of Sales. *Id.* ¶ 27. Defendant Dennis Tompkins is Big Geyser's Borough Manager of Manhattan. *Id.* ¶ 28. Defendant Kayte Mooney is Big Geyser's Borough Manager for Brooklyn and Staten Island. *Id.* ¶ 29. Plaintiffs allege that the aforementioned individuals (together "Individual Defendants") are "employers" within the meaning of the FLSA and NYLL. *Id.* ¶ 32.

## A. Classification as Independent Contractors

Big Geyser's business model depends on its wide distribution network. To fulfill this purpose, the company hires individuals, such as Plaintiffs, to market, service, and distribute its products. *Id.* ¶ 13. The company divides such hires into two groups: (A) individuals that distribute products in New York City's five boroughs and (B) individuals that distribute the same products outside the City, in Westchester, Putnam, Nassau, and Suffolk counties. *Id.* ¶ 14. Big

Geyser classifies individuals in Group A, which includes Plaintiffs, as "independent contractors," while it classifies those in Group B as "employees." *Id.* ¶¶ 14-15.

Plaintiffs contend that they, too, should be characterized as employees. They have each worked full-time—in many cases, 70 or 80 hours per week. *Id.* ¶ 66; *accord* ¶¶ 33-65 (listing hours worked). Further, their work is essential to Big Geyser's business model. *Id.* ¶ 90(a). Chiefly, Plaintiffs allege that Big Geyser directs and controls virtually every aspect of their day-to-day operations. *Id.* ¶ 18. For instance, Defendants require that Plaintiffs follow Big Geyser's policies and procedures; impose penalties for perceived failures to comply with those policies and procedures; and substantially supervise and control details of Plaintiffs' services, including their use of helpers, what products they distribute, to whom, where, and how, and the amount of money Plaintiffs can earn. *Id.* ¶ 90.

### i. Distributor Agreement and Route Purchases

As a condition of serving as a distributor for Big Geyser, nearly all Plaintiffs were required to form or use a single-person legal entity and enter into a "Distributor Agreement." *Id.* ¶ 73.[2] They were also required to "purchase" a distributorship route comprised of Big Geyser accounts in and around New York City. *Id.* ¶ 74. Purchasing the route gave each Plaintiff the exclusive right to service particular Big Geyser customer accounts in an area of New York City, contingent upon their payment of the purchase price and strict compliance with terms and conditions of performance as dictated by Big Geyser. *Id.* ¶ 75. Those terms and conditions are set forth in the Distributor Agreements and Big Geyser's Distributors' Handbook, which is amended from time to time at Big Geyser's sole discretion. *Id.*

### 1. Financial Requirements

---

[2] For reasons that are not apparent, three Plaintiffs were not required to sign the Agreement. *Id.*

Nearly every Plaintiff supported their purchase with promissory notes payable to Big Geyser or a prior route owner and backed by Plaintiffs' personal guarantees. *Id.* ¶ 83. The interest rate on such notes accrued as high as 9% per annum. *Id.* If distributors fail to make the required payments with interest, or fall behind, Defendants retain the right to hold them in default or restructure the loan provisions. *Id.* ¶ 84. Further, Big Geyser receives a $5,000 "fee" upon any transfer of a Big Geyser route. *Id.* ¶ 83. Plaintiffs argue that this arrangement saddles them with financial burdens while they are already struggling to provide for themselves. *Id.* ¶ 84. It also allows Defendants to profit from their relationship with Plaintiffs. *Id.* ¶ 85.

## 2. Distributor Agreement Requirements

The Distributor Agreement purports to define the relationship between the distributors and Big Geyser.[3] It characterizes the relationship as one between a "supplier" and an "independent contractor." *Id.* ¶ 76. Plaintiffs contend, however, that in the reality the Agreement defines an employee-employer relationship. *Id.* For instance, the Agreement requires each distributor to "personally" devote their "full-time" energy and attention to Big Geyser accounts; prohibits them from accepting or engaging in any other employment or occupation; requires them to work exclusively for Big Geyser at all times; and mandates that they request time off upon 30-days written notice if they seek to take more than two consecutive days off, and that Big Geyser retains the right to "approve or reject" the request in its "sole discretion." *Id.* ¶¶ 76-78. The Agreement also gives Big Geyser the "right" to "buy-back" the route and/or terminate the relationship at any time. *Id.* ¶ 79. Further, it contains a non-compete provision restricting Plaintiffs' rights to obtain employment after termination of their relationship with Big Geyser. *Id.* ¶ 80.

---

[3] Plaintiffs allege that the Distributor Agreements between each Plaintiff and Big Geyser "are the same in all material respects." FAC ¶ 73 n.2.

## B. Labor Law Violations

As a result of their mischaracterization as independent contractors, Plaintiffs contend, they have been denied the minimum rights, benefits, and privileges afforded to employees under state and federal law. *Id.* ¶ 69. For instance, Big Geyser does not pay them minimum wage, abide by record-keeping requirements, or provide workers' compensation insurance. *Id.* ¶ 16. Big Geyser has deducted wages and forced them to bear the costs and expenses of performing their duties. *Id.* ¶ 70. Such costs include the vehicles required to perform their work; decals displaying Big Geyser's products and contact information; insurance; charges for spoilage, breakage, and damaged or expired products; uniforms; hiring drivers and helpers to facilitate distribution; refrigeration and security fees; company-mandated training sessions; and share of federal employment taxes. *Id.* ¶ 71.

## C. Retaliation

Plaintiffs allege that they have faced retaliation for challenging Defendants' employment practices. Plaintiffs consulted with legal counsel about potential claims in June 2017, and engaged their current counsel the following month. *Id.* ¶¶ 93-94. Around that time, in early July, Plaintiffs believe that Defendants became aware that Plaintiffs had consulted with counsel. *Id.* ¶ 95. On July 21, 2017, Plaintiffs' counsel wrote to Big Geyser and the Individual Defendants to notify them of the contemplated FLSA and NYLL claims. *Id.* ¶ 96. The letter warned against any acts of recrimination or retaliation. *Id.* ¶ 97.

However, following the notice, Big Geyser representatives began reaching out to numerous distributors, including some Plaintiffs, to inquire about whether they were "involved" in the lawsuit and warning them against any such participation. *Id.* ¶ 98. Plaintiffs contend that these communications were designed to dissuade distributors from participating in the lawsuit. *Id.* ¶ 99.

### i. Marchese

Further, Defendants retaliated against individuals believed to be "lead" plaintiffs, such as Philip Marchese. *Id.* ¶ 100. For instance, Defendants sought out "damaging" information that they could use against Marchese from customers, and in turn told those customers not to continue conducting business with Marchese. *Id.* ¶ 102. On July 27, 2017, following a meeting between Reda, Mooney, and Marchese—ostensibly to review Marchese's accounts—Reda and Mooney emailed Marchese a detailed list of areas requiring improvement and issued a "14-day violation" penalty against him. *Id.* ¶ 103. This penalty impeded Marchese from servicing his accounts and damaged his relationships with those accounts going forward. *Id.* ¶ 106.

Further, on July 26, 2017 Reda sent an email to Big Geyser executives and distributors that denigrated Marchese and stated that Big Geyser needed to take action against "these poor performing route owners" who "are doing large amounts of damage to our business." *Id.* ¶ 107. Plaintiffs contend that Defendants took such actions in order to cripple Marchese and serve as a warning to others considering involvement in the lawsuit. *Id.* ¶¶ 106, 107.

On August 3, 2017, Big Geyser sent Marchese a letter stating that it had elected to proceed with a unilateral forced buy-out of Marchese's route under the terms of the Distributor Agreement. *Id.* ¶ 109. Defendants conditioned the buy-out on Marchese's signing of a general release not to sue Big Geyser, including for violations alleged in this suit. *Id.* ¶¶ 110-11. Marchese's counsel responded that he would accept the pricing terms proposed by Defendants but would not agree to forego his rights to sue. *Id.* ¶ 111. Then days later, on August 17, 2017, Big Geyser notified Marchese that it instead decided to terminate him for cause, and would only exercise its buy-back option "if the parties released each other fully." *Id.* ¶ 112. Otherwise, Big Geyser would declare him in default of his promissory notes and pursue him for monies owed, interest, and attorneys' fees. *Id.* ¶ 113.

### ii. Scotto

In June 2017, Big Geyser stopped Plaintiff John Scotto from rolling his truck, purportedly due to an outstanding balance for certain Big Geyser products. *Id.* ¶ 115. Big Geyser then retained custody of Scotto's truck. It has since been running Scotto's route and servicing his accounts, effectively terminating him. *Id.* Plaintiffs allege that this has left Scotto without adequate means to support his family. *Id.*

In early August 2017, counsel contacted Big Geyser on Scotto's behalf and informed them of Scotto's financial duress and that he desired to retrieve his truck as soon as possible. *Id.* ¶ 116. Big Geyser responded by letter on August 17, stating that Scotto's route was "suspended," Scotto was in default, and that Big Geyser had elected to accelerate Scotto's indebtedness. *Id.* ¶ 117. However, Big Geyser would buy out Scotto and allow him to avoid those consequences if he agreed to a full mutual release and waiver of all claims as part of the buy-back agreement. *Id.*

Scotto and Marchese both refused to proceed with a buy-out conditioned on a waiver of their rights, and accordingly Defendants have taken over both of their accounts without providing them with monetary compensation. *Id.* ¶ 119, 121. Plaintiffs believe that Big Geyser is retaining profits attributable to those accounts. *Id.* ¶ 121.

Plaintiffs also allege that Big Geyser has taken retaliatory actions against other distributors, for instance by taking over certain routes or accounts without notice, suddenly requesting meetings with Plaintiffs, and making other arbitrary changes to the terms and conditions of their jobs. *Id.* ¶ 108.

### D. State Actions

On September 25, 2017, after Plaintiffs filed this action, Big Geyser filed two separate lawsuits in Supreme Court, Queens County against Marchese, Sotto, and their companies for

breach of their promissory notes. *Id.* ¶¶ 122-23. The lawsuits did not mention this federal case. *Id.* ¶ 127. Plaintiffs allege that Big Geyser filed the state court actions to intimidate Plaintiffs into not exercising their rights. *Id.* ¶ 128. On July 2, 2018 and June 22, 2018 respectively, the court dismissed both lawsuits in favor of this federal action. *See* ECF No. 169 Ex. A (Order of Dismissal, *Big Geyser, Inc. v. Queens Boro Beverages Inc. & John Scotto*, No. 713305/2017 (N.Y. Sup. Ct. Queens Cnty. July 2, 2018)), Ex. B (Order of Dismissal, *Big Geyser, Inc. v. Vam Beverage Corp. & Philip Marchese*, No. 713307/2017 (N.Y. Sup. Ct. Queens Cnty. June 22, 2018)).

## II.     Procedural Background

Plaintiffs filed the complaint commencing this action on August 24, 2017. ECF No. 1. They filed an amended complaint on November 9, 2017, which is the operative complaint in this motion. ECF No. 35. On November 22, 2017, Defendants moved to dismiss Counts V, VI, VII, IX, XII, XIII, XIV, XV, and XVIII. ECF No. 39 ("Def Mem").[4] Plaintiffs responded in opposition on December 11, 2017. ECF No. 48 ("Pl Opp"). Defendants replied on December 18, 2017. ECF No. 58 ("Def Reply"). Accordingly, the Court considers the matter fully submitted.

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows

---

[4] At this point, Defendants do not challenge Count I (FLSA minimum wage); II (FLSA overtime); III (NYLL minimum wage); IV (NYLL overtime); VIII (NYLL reimbursement for uniform purchases and laundering costs); X (NYLL notices); XI (NYLL spread of hour wages); Count XVI (unjust enrichment); or XVII (declaratory judgment).

the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also id.* at 681. Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

Fraud claims are subject to Rule 9(b)'s heightened pleading requirements. A party alleging fraud must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (citation omitted).

## DISCUSSION

### I.   Count V: NYLL § 198-c Wages and Benefits

NYLL § 198-c provides criminal liability for "any employer who is party to an agreement to pay or provide benefits or wage supplements" and fails to do so within thirty days after such payments are required. The section "codifies the general understanding that vacation and sick

pay are purely matters of contract between an employer and employee," and thus creates liability not for failure to pay vacation and sick pay but for failure to abide by an existing agreement to provide such benefits. *Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 476 (E.D.N.Y. 2011). The movant must "plead the existence of an agreement that entitled him to accrued vacation and/or sick pay upon his termination because '[t]he primary and dispositive issue in applying [section 198–c] is whether there was any basis for the accrual of vacation benefits.'" *Id.* (quoting *Gennes v. Yellow Book of New York, Inc.*, 23 A.D.3d 520, 522 (N.Y. 2d Dep't 2005)). Such an agreement may be "express or implied." *Crawford v. Coram Fire Dist.*, No. 12-cv-3850, 2015 WL 10044273, at *5 (E.D.N.Y. May 4, 2015) (citation omitted).

First, this Court must consider whether there is a private cause of action under § 198-c. Since the section does not contain an explicit cause of action, "plaintiffs can seek civil relief . . . only if a legislative intent to create such a right of action is fairly implied in the statutory provisions and their legislative history." *Nat'l Convention Sev's, LLC v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 239 F. Supp. 3d 761, 778 (S.D.N.Y. 2017) (quoting *Cruz v. TD Bank, N.A.*, 22 N.Y.3d 61, 70 (N.Y. 2013)). When interpreting federal and state statutes, "a private right of action may be implied where (1) plaintiffs are within the class for whose special benefit a statute was enacted; (2) there is indication of a legislative intent, explicit or implicit, to create a remedy for the plaintiffs; and (3) implying a remedy is consistent with the underlying purposes of the legislative scheme." *Chu Chung v. New Silver Palace Rest., Inc.*, 272 F. Supp. 2d 314, 316 (S.D.N.Y. 2003) (citing *Cort v. Ash*, 422 U.S. 66, 78 (1975)). The third factor is "the most important." *Nat'l Convention Serv's*, 239 F. Supp. 3d at 778 (quoting *Cruz*, 22 N.Y.3d at 70). This is because "the Legislature has both the right and the authority to select the methods to be used in effectuating its goals," and accordingly "regardless of its consistency with the basic

legislative goal, a private right of action should not be judicially sanctioned if it is incompatible with the enforcement mechanism chosen by the Legislature or with some other aspect of the over-all statutory scheme." *Cruz*, 22 N.Y.3d at 70-71 (internal quotation marks and citation omitted). Accordingly, the New York Court of Appeals has "declined to recognize a private right of action in instances where [t]he Legislature specifically considered and expressly provided for enforcement mechanisms in the statute itself." *Id.* at 71 (internal quotation marks and citations omitted).

Here, it is clear that Plaintiffs fall within the class of persons for whose benefit the statute was enacted. Further, implying a civil cause of action would advance the legislative purpose. "However, as is usually true in implied private right of action cases, the controversy focuses on the third factor—whether an intent to create a private right of action would be consistent with, and can be inferred from, the legislative scheme." *Cruz*, 22 N.Y.3d at 72.

Among courts that have considered this issue, "[t]here is 'conflicting case law' and 'considerable disagreement' as to whether a private right of action under the Labor Law may be implied." *Castagna v. Luceno*, No. 09-cv-9332, 2011 WL 1584593, at *21 (S.D.N.Y. Apr. 26, 2011) (citation omitted). Many courts have inferred a private right of action under § 198-c, reasoning that it "comports with the remedial purposes of the Labor Law and the language of Section 198, which allows for attorneys' fees and the like for employees bringing private claims." *Id.* (collecting cases). Other courts have declined to infer a private right of action. *See Ramos v. SimplexGrinnell* LP, 796 F. Supp. 2d 346, 371 (E.D.N.Y. 2011) (collecting cases), *vacated in part on other grounds by Ramos v. SimplexGrinnell LP*, 773 F.3d 394 (2d Cir. 2014).

Moreover, as Defendants note, cases inferring a private right of action generally pre-date 2010 revisions to § 198. Until then, § 198 simply provided that "[i]n any action instituted upon a

wage claim by an employee or the commissioner in which the employee prevails," the employee is entitled to certain costs and fees. This led to the reasonable inference that employees must have a private right of action in order to win such costs and fees. However, in 2010 the legislature amended the statute and added explicit private rights of action for certain claims (discussed below) but not others. *See* 2010 Sess. Law News of N.Y. Ch. 564 (S. 8380) (eff. Apr. 9, 2011). "Thus, the Legislature clearly knew how to include a private right of action when it intended to do so, and the omission of any similar language [for violations of § 198-c] evinces a legislative intent not to provide for a private right of action" for such violations. *Flagstar Bank, FSB v. State*, 114 A.D.3d 138, 148 (N.Y. 2d Dep't 2013) (collecting cases). Accordingly, the Court declines to infer a private right of action here.

Defendants next contend that Plaintiffs fail to state a claim because § 198-c claims are dependent on the existence of an agreement to provide benefits, and Plaintiffs have not alleged the existence of any such agreement. To the contrary, Defendants note, Plaintiffs allege that Defendants characterized them as independent contractors precisely to avoid paying benefits. Plaintiffs respond that Big Geyser has contracted to provide benefits to those workers that it considers employees, and only evades providing these benefits to Plaintiffs by wrongfully characterizing them as independent contractors.

Here, Plaintiffs have the better of the argument. At this point, they have stated a claim that Big Geyser contracted with its employees to provide benefits covered under § 198-c. If Plaintiffs can prove that they are in fact Big Geyser's employees, then failing to provide such benefits would violate § 198-c. However, since § 198-c does not contain a private right of action, this claim must be dismissed.

## II.  Count VI: NYLL §§ 193, 198, 198-b; FLSA 29 U.S.C. § 206(a), 29 C.F.R. § 531.35 Improper Deductions and Failure to Reimburse Expenses

NYLL § 193 "proscribes most deductions from the 'wages' of 'employees.'" *Pachter v. Bernard Hodes Group, Inc.*, 541 F.3d 461, 463 (2d Cir. 2008). Under the statute, "[o]nce wages are earned, 'deductions other than those set forth in section 193 are improper.'" *Jankousky v. N. Fork Bancorporation, Inc.*, No. 08-cv-1858, 2011 WL 1118602, at *3-4 (S.D.N.Y. Mar. 23, 2011) (quoting *Patcher v. Bernard Hodes Grp., Inc.*, 891 N.E.2d 279, 284-86 (N.Y. 2008)). As described further *infra*, NYLL § 198-b and 29 C.F.R. § 531.35 prohibit kickbacks under state and federal law respectively.

Plaintiffs allege that Defendants charged Plaintiffs for work-related expenses such as vehicles, insurance, communications equipment, handheld devices and software, training, route purchase expenses, merchandising and marketing costs, uniforms, refrigeration fees, and security fees, without reimbursing them. FAC ¶ 178. Defendants argue that Plaintiffs fail to state a claim because reimbursement is only required if the costs bring the employee's salary below the minimum wage. Plaintiffs respond that Defendants' argument applies only to tools of the trade, while the costs at issue here are "Defendants' business expenses," which are improperly charged to Plaintiffs. Pl Opp at 11.

Regardless of what type of expenses are at issue, courts in this District have held that "under New York law, employers do not have to reimburse employees for business expenses . . . so long as not doing so does not reduce the employee's wage below the minimum wage." *Oram v. SoulCycle LLC*, 979 F. Supp. 2d 498, 507 (S.D.N.Y. 2013) (citation omitted); *see also Mumin v. Uber Tech., Inc.*, 239 F. Supp. 3d 507, 534 (E.D.N.Y. 2017) ("[Defendant] has not shown that such expenses would reduce his effective wage to below the minimum wage required in New York. Therefore, even if failure to reimburse does constitute an unlawful deduction, [Defendant] fails to properly allege an unlawful deduction here."); *Lin v. Benihana Nat'l Corp.*, 755 F. Supp.

2d 504, 511-12 (S.D.N.Y. 2010) (collecting cases). Further, NYLL prohibits direct deductions—it does not apply to claims of failure to reimburse. *See Bondoc v. Skylar*, No. 152178/2015, 2017 N.Y. Slip Op. 30058(U) (N.Y. Sup. Ct. N.Y. Cnty. Jan. 12, 2017) ("A failure to reimburse is not a deduction.").

Courts have likewise interpreted the FLSA to only "prohibit[] employers from requiring employees to purchase the tools of their trade or give any money back to their employers, when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act." *Jiaren Wei v. Lingtou Zhengs Corp.*, No. 13-cv-5164, 2015 WL 739943, at *13 (E.D.N.Y. Feb. 20, 2015) (internal quotation marks and citation omitted).

Accordingly, any claims for unlawful deductions that bring Plaintiffs' wages below the minimum wage must be subsumed into the minimum wage analysis.

## III.  Count VII: NYLL § 198-b; FLSA 29 U.S.C. § 206(B) & 29 C.F.R. § 531.35 "Kick-back" of Wages

NYLL § 198-b prohibits "any person" from demanding or receiving kickbacks of "an agreed rate of wages" as a condition of procuring or retaining employment. Plaintiffs contend that their payments to Big Geyser to purchase their routes constitute an illegal kickback.

Defendants first argue that § 198-b does not contain a private right of action, and that this Court should not infer one here. As Defendants acknowledge, one court in this District inferred a private right of action under § 198-b. *Chu Chung*, 272 F. Supp. 2d at 316-17. Acknowledging that "no cases" directly addressed the question, the Court held that restaurant employees were in the class for whose benefit the statute was enacted; the remedies provided by Article VI "suggest a legislative intention in favor of a civil remedy against employers;" and "the New York Labor Law reflects a strong legislative policy aimed at redressing the power imbalance between

employer and employee." *Id.* at 316-17 (internal quotation marks and citations omitted). Additionally, while not explicitly addressing this question, the First Department cited to the portion of *Chu Chung* that inferred a private cause of action as it allowed a § 198-b claim to proceed. *Martinez v. Alubon, Ltd.*, 111 A.D.3d 500, 500 (N.Y. 1st Dep't 2013) (citing *Chu Chung*, 272 F. Supp. 2d at 317). Further, as Plaintiffs note, numerous courts have assumed, without deciding, that § 198-b contains a private right of action. Pl Opp at 12; *see Calle v. Yoneles Enter., Inc.*, No. 16-cv-1008, 2017 WL 6942652, at *10 (E.D.N.Y. Oct. 24, 2017); *Goldberg v. Jacquet*, No. 14-cv-1581, 2015 WL 5172939, at *3-4 (S.D.N.Y. Sept. 3, 2015); *Lath Roisters Local Union No. 838 v. Melen*, 1983 U.S. Dist. LEXIS 17205, at *5-6 (S.D.N.Y. 1983).

Defendants contend that *Chu Chung* was misguided. They provide an accounting of § 198-b's legislative history, emphasizing that § 198-b was originally part of the penal law and that "for almost 80 years after [the statute] was first enacted," no court inferred a state law cause of action. Def Mem at 13-16. Defendants note that, since *Chu Chung*, the New York legislature explicitly created private rights of action for some, but not all, violations of the Labor Law. *Id.* at 17.

Whether § 198-b contains a private right of action is unclear. For the reasons articulated above, the Court declines to infer a private right of action here.

Second, Defendants argue that the provision does not apply where the alleged payment is a business transaction where something of value is exchanged. Since Plaintiffs received their Routes in exchange for the payments, Defendants argue, this was a bilateral transaction and not a kickback covered by § 198-b. For this proposition, Defendants rely on a dissenting opinion in an unpublished 9th Circuit case stating it would have certified the question to the New York Court of Appeals. *Howard v. Gap, Inc.*, No. 07-15913, 2009 WL 766500 (9th Cir. Mar. 24, 2009).

This is not binding or persuasive on this Court. This Court sees no authority supporting Defendants' contention here.

Third, Defendants argue that Plaintiffs' claims are time-barred. NYLL provides for a six-year statute of limitations. NYLL § 198; *see Pinzon v. Paul Lent Mech. Sys., Inc.*, No. 22-cv-3384, 2012 WL 4174725, at *2 (E.D.N.Y. Aug. 21, 2012). Plaintiffs filed this action on August 24, 2017. Thus, the statute of limitations expired on August 24, 2011. Claims by all Plaintiffs that signed their Distributor Agreements on or after August 24, 2011 clearly could go forward. Plaintiffs argue that even individuals who signed Distributor Agreements more than six years ago may proceed with their claims so long as they made payments constituting kickbacks within the limitations period. However, Plaintiffs allege that the "purchase" of "a Big Geyser route" constituted the illegal kickback. *See* FAC ¶¶ 188-90. Accordingly, the cause of action accrued at purchase. As a result, claims from Plaintiffs who purchased their routes prior to August 24, 2011 would be dismissed in any event.

Fourth, Defendants contend that most Plaintiffs' claims must be dismissed because they purchased their Routes from a former Route Owner, not Big Geyser, and thus there was no "illegal kickback" to *Big Geyser*. Def Mem at 12 (citing FAC ¶ 83).[5]   Plaintiffs do not respond to this contention. However, the complaint alleges that Defendants required each Plaintiff to purchase a route, FAC ¶ 74, and that Big Geyser received a $5,000 "fee" upon any transfer of a Big Geyser route. *Id.* ¶ 83. Thus, it appears that Big Geyser profited from each Plaintiff's purchase of a Route—whether directly through the purchase or through the $5,000 payment for the transfer. The three unnamed Plaintiffs who were not required to enter into a Distributor Agreement and thus not required to purchase a route, however, do not state a claim. *See id.* ¶ 73.

---

[5] Defendants aver that only eight Plaintiffs purchased their routes directly from Big Geyser. Def Reply at 9 & n.5.

Fifth, Defendants argue that § 198-b only applies when there is an "agreement" to pay wages, but the complaint alleges the absence of any such agreement. However, as discussed *supra* this argument is of no moment because Plaintiffs allege that there was an agreement to pay employees wages and they should be considered employees. Nevertheless, since § 198-b does not contain a private right of action, the claim cannot go forward.

Finally, Defendants allege that, to the extent this claim is predicated on the FLSA, the FLSA does not contain an independent claim for kickbacks. Regulations adopted under the FLSA provide that its minimum wage requirements "will not be met where the employee kicks-back directly or indirectly to the employer or to another person for the employer's benefit the whole or part of the wage delivered to the employee." 29 C.F.R. § 531.35. The provision is tied to the calculation of wages, ensuring that employers do not "require that their employees give any money back to them, such that an employees' resulting compensation falls below the minimum wage." *Perez v. Westchester Foreign Autos, Inc.*, No. 11-cv-6091, 2013 WL 749497, at *9 (S.D.N.Y. Feb. 28, 2013) (collecting cases); *accord Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 256 (S.D.N.Y. 2008) (stating, during minimum wage analysis, that kickbacks "must be subtracted for purposes of calculation of wages"). Accordingly, the Court agrees that, to the extent such claims are based on the FLSA, they should be subsumed into the minimum wage analysis under Count I.

## IV. Count IX: NYLL §§ 195(1)(a), 195(2), and 198(1-b), (4) Notices

NYLL § 195(2) requires employers to notify employees of changes in their rates of pay. Plaintiffs contend that Defendants made frequent, unilateral changes to Plaintiffs' employment without providing the requisite notice.

Defendants argue that this claim must be dismissed because § 195(2) does not provide for a private right of action.[6] They point to the text of § 198, which provides for a private right of action for violations of § 195(1), *see* § 198(1-b), and § 195(3), *see* § 198(1-d), but not for § 195(2). Plaintiffs contend that this Court should infer a private right of action because (1) they are of the class for whose particular benefit the statute was enacted, (2) recognition of such a right would promote the legislative purpose, and (3) creation of such a right would be consistent with the legislative scheme. Pl Mem at 16. Further, Plaintiffs argue that, either way, they also seek injunctive and declaratory relief for which the Court can provide a remedy.

For the same reasons discussed above, Plaintiffs satisfy the first and second requirements. They fail on the third prong, however, because the legislature explicitly created private rights of action for two other subsections of the same statute. Courts have, accordingly, declined to infer a right of action under § 195(2). *See Guan Ming Lin v. Benihana New York Corp.*, No. 10-cv-1335, 2012 WL 7620734, at *7 (S.D.N.Y. Oct. 23, 2012) ("The plain language of the statute, as the defendants argue, confers a private right of action upon those who do not receive their notice at the time of hiring, but not upon those who do not receive it on or before February first of any subsequent year."); *Dowd v. 6675 Transit Rd LLC*, No. 16-cv-1006V, 2017 WL 5713956, at *3-4 (W.D.N.Y. Oct. 23, 2017) (same); *see also Kone v. Joy Constr. Corp.*, No. 15-cv-1328, 2016 WL 866349, at *5 (S.D.N.Y. Mar. 3, 2016) (same with respect to § 195(5)).

Plaintiffs allege that, in any event, this court "clearly retains equitable power" to issue equitable relief under § 195(2). Pl Mem at 17. However, this Circuit has held that, based on its interpretation of the U.S. Supreme Court's decisions in *Suter* and *Gwinnett*, "the question [of] whether a litigant has a cause of action is analytically distinct and prior to the question of what

---

[6] Defendants do not appear to challenge Plaintiffs' claim under § 195(1)(a), which does contain a right of action. *See* § 198(1-b).

relief, if any, a litigant may be entitled to receive." *Health Care Plan, Inc. v. Aetna Life Ins. Co.*, 966 F. 2d 738, 742 (2d Cir. 1992) (citations and internal quotation marks omitted). Indeed, while "[f]ederal courts generally have inherent power to grant injunctive relief . . . this power can be limited by statute." *Conboy v. AT&T Corp.*, 241 F.3d 242, 254 (2d Cir. 2001).

Accordingly, this Court declines to infer a private right of action here.

## V.    Count XII: NYLL §§ 195, 661 Contemporaneous Wage and Hour Records

NYLL § 195(4) requires employers to "establish, maintain and preserve" payroll records reflecting "for each week worked the hours worked; the rate or rates of pay and basis thereof" and other information. As Defendants argue, "nothing in the NYLL authorizes an independent cause of action based on a violation of § 195(4)." *Carter v. Tuttnaeur U.S.A. Co., Ltd.*, 78 F. Supp. 3d 564, 571 (E.D.N.Y. 2015); *accord In re Domino's Pizza Inc.*, No. 16-cv-6274, 2018 WL 1587593, at *7 (S.D.N.Y. Mar. 27, 2018) (dismissing claim "[b]ecause no 'independent cause of action' for violations of New York's recordkeeping requirements exists"). As discussed, the fact that §§ 195(1) and (3) contain explicit rights of action counsels against implying such a right for other subsections of § 195. Accordingly, the Court will not imply such a right here.

The next issue is whether there is a private right of action under § 661, the record-keeping provision of New York's Minimum Wage Act. The penalties section of the Minimum Wage Act provides for criminal penalties for violations of the record-keeping provisions. NYLL § 662(2). Its civil action section explicitly authorizes both employees and the Commissioner to sue if the employee is paid less than minimum wage. NYLL § 663(1), (2). The section neither explicitly authorizes the employee or the Commissioner to sue to enforce § 661. Some courts appear to have presumed, without deciding, that there is a private cause of action under § 661. *See Jemine v. Dennis*, 901 F. Supp. 2d 365, 376 (E.D.N.Y. 2012) ("[T]his Court finds that the

undisputed allegations in the complaint and default submissions are sufficient to impose liability on defendants under the NYLL . . . record-keeping provisions."). However, in light of the uncertainty surrounding this issue, and because § 663 explicitly provides for a private right of action for the minimum wage but not the record-keeping provision, this Court declines to infer a private right of action here. *See In re Domino's Pizza, Inc.*, No. 16-cv-6274, 2018 WL 1587593 (S.D.N.Y. Mar. 27, 2018).

## VI. Count XIII: FLSA 29 U.S.C. §§ 215(a)(3); 218c Retaliation

The FLSA makes it unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under [the FLSA]." 29 U.S.C. § 215(a)(3). This provision "enforces appropriate wage and hour standards under the FLSA by ensuring that 'fear of economic retaliation' does not 'operate to induce aggrieved employees quietly to accept substandard conditions.'" *Alfalo v. Cantor Fitzgerald, L.P.*, 298 F. Supp. 3d 688, 694 (S.D.N.Y. 2018) (quoting *Mitchell v. RobertDeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960)). [7]

Courts analyze FLSA retaliation claims under the "three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Id.* (citing *Mullins v. City of N.Y.*, 626 F.3d 47, 53 (2d Cir. 2010)). Under the *McDonnell Douglas* framework, the employee bears the initial burden of setting forth a prima facie case of discrimination by establishing "'(1) participation in protected activity known to the defendant, like the filing of a FLSA lawsuit; (2) an employment action disadvantaging the plaintiff; and (3) a causal

---

[7] Plaintiffs also bring a claim under § 218c. Defendants contest that § 218c covers FLSA retaliation claims and assert that, in any event, Plaintiffs must first exhaust their administrative remedies. Def Mem at 25 n.14. Plaintiffs do not contest this assertion in their opposition. Since Plaintiffs do not allege that they have exhausted their administrative remedies, their § 218c claim is dismissed. *See Richter v. Design at Work, LLC*, No. 14-cv-650, 2014 WL 3014972, at *4 (E.D.N.Y. July 3, 2014).

connection between the protected activity and the adverse employment action.'" *Dunn v. Sederakis*, 143 F. Supp. 3d 102, 109 (S.D.N.Y. 2015) (quoting *Mullins*, 626 F.3d at 53).

If the plaintiff makes a prima facie case, "'the burden shifts to the employer to give a legitimate . . . reason for its actions[.]'" *Wang v. Palmisano*, 157 F. Supp. 3d 306, 328 (S.D.N.Y. 2016) (quoting *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014)). Then, "'the burden shifts back to the plaintiff to show that the employer's explanation is a pretext for . . . retaliation.'" *Id.* (quoting *Kirkland*, 760 F.3d at 225).

The plaintiff "is not required to specifically plead every element of a prima facie case to survive a motion to dismiss; however, he [s]till . . . must plead facts sufficient to render his . . . retaliation claim facially plausible under *Twombly* and *Iqbal.*" *Wang*, 157 F. Supp. 3d at 328-29 (collecting cases); *accord Jian Zhong Li v. Oliver King Enter., Inc.*, No. 14-cv-9293, 2015 WL 4643145, at *2 (S.D.N.Y. Aug. 4, 2015) (at motion to dismiss stage, "the Court does not specifically apply the *McDonnell Douglas* burden-shifting test to determine whether Plaintiff has stated a retaliation claim, but rather generally assesses the plausibility of Plaintiff's claim based on the facts alleged in the Complaint."). Indeed, at this point "Plaintiffs need only plead facts sufficient to give Defendants fair notice of the grounds upon which their claims rest and to make their claims plausible." *Cabrera v. CBS Corp.*, No. 17-cv-6011, 2018 WL 1225260, at *5 (S.D.N.Y. Feb. 26, 2018) (citation omitted).

Here, Plaintiffs allege two types of retaliation. The first set of allegations charge Defendants Big Geyser, Reda, and Mooney with specific acts of retaliation against Plaintiffs Marchese and Scotto, which ultimately resulted in their termination when they would not forego their rights to sue. *See* FAC ¶¶ 96, 100-28. Defendants do not challenge these allegations at this stage. Def Mem at 28 n.17. The rest of the complaint essentially alleges that "all of the

Defendants are 'employers' under the FLSA and NYLL and have control over the Plaintiffs day to day employment, and []they all participated in the wrongs alleged and have acted in concert." Pl Opp at 21.

Plaintiffs satisfy the first prong because they plead that Plaintiffs participated in this lawsuit, and their counsel informed Big Geyser of their exercise of their labor rights. FAC ¶¶ 93-97. *See Zhong Li*, 2015 WL 4643145, at *2 ("In this case, Plaintiff has adequately alleged that he engaged in protected activity by filing an FLSA lawsuit[.]").

The next issue is whether Plaintiffs have sufficiently pleaded that they suffered adverse employment actions. "An employment action is adverse if it 'might have dissuaded a reasonable worker from making or supporting similar charges.'" *Cabrera*, 2018 WL 1225260, at *6 (quoting *Mullins*, 626 F.3d at 53). Here, Plaintiffs allege that, immediately upon hearing of the lawsuit, "Big Geyser began reaching out to numerous distributors, including some of the plaintiffs herein," to inquire about their involvement in the case and warn them against being involved. FAC ¶¶ 98-99. Further, Defendants took "draconian and oppressive employment actions" such as "terminating several plaintiffs and otherwise subjecting all of the plaintiffs to hostile and retaliatory acts, threats, and penalties." *Id.* ¶ 227. Plaintiffs also allege that the specific retaliatory actions against Marchese and Scotto, such as their termination and pursuit of them in state court, served as intimidating messages designed to stop Plaintiffs from asserting their rights. FAC ¶¶ 114, 128.

Defendants contend that the FAC fails to specify what types of adverse employment actions were taken and by which Defendants. Indeed, Plaintiffs' allegations are general. However, at this early pleading stage "Plaintiffs need not allege with such specificity the who, what, when, and where that Defendants suggest is required." *Cabrera*, 2018 WL 1225260, at *5.

Moreover, courts have held that filing baseless counterclaims against FLSA plaintiffs "can, under certain circumstances, constitute adverse employment action sufficient to state a claim for retaliation." *Flores v. Mamma Lombardis of Holbrook, Inc.*, 942 F. Supp. 2d 274, 279 (E.D.N.Y. 2013) (collecting cases). This is "precisely because of their *in terroem* effect." *Torres v. Gristede's Op. Corp.*, 628 F. Supp. 2d 447, 473 (S.D.N.Y. 2008) (citing *Bill Johnson's Rests. v. NLRB*, 461 U.S. 731, 740 (1983)).

Finally, the Court addresses causation. "In retaliation cases, a causal connection between the protected activity and the adverse action can be established by either 'evidence of retaliatory animus directed against a plaintiff by the defendant' or a close temporal proximity between the protected activity and the adverse employment action." *Lin v. Great Rose Fashion, Inc.*, No. 08-cv-4778, 2009 WL 1544749, at *18 (E.D.N.Y. June 2, 2009) (citing *DeCintio v. Westchester Cty. Medical Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987)). Plaintiffs allege that, immediately after learning that Plaintiffs had filed this action, Big Geyser began reaching out to them and sending intimidating messages warning, implicitly or explicitly, of repercussions for their involvement. Pl Opp at 23-24. This is sufficient to allege causation.

Accordingly, at this stage Plaintiffs state a plausible claim.[8]

## VII.  Count XIV: NYLL § 215 Retaliation

Under NYLL employers may not "discharge, threaten, penalize, or in any other manner discriminate or retaliate against any employee" based on, *inter alia*, a complaint regarding a NYLL violation. NYLL § 215. Courts apply the same burden-shifting framework discussed above to NYLL claims. *Esmilla v. Cosmopolitan Club*, 936 F. Supp. 2d 229, 239 n.7 (S.D.N.Y.

---

[8] Defendants contend that, at a minimum, Plaintiff Lenny Cesare's retaliation claims should be dismissed because he no longer owned a Big Geyser route when the action was filed and Plaintiffs do not allege that any conduct was directed toward him. Plaintiffs do not rebut this claim. Since Plaintiffs have not alleged any adverse employment action against Cesare, such claims are dismissed as to him.

2013) (citations omitted). However, "[t]he protection afforded to workers under the NYLL retaliatory termination provision is 'more broadly worded' than in the FLSA." *Alfalo*, 298 F. Supp. 3d at 698 (quoting *Thompson v. Jennings & Hartwell Fuel Oil Corp.*, No. 14-cv-1857, 2015 WL 5437492, at *4 (E.D.N.Y. Aug. 27, 2015)). Accordingly, since Plaintiffs state a claim under the FLSA, they also state a claim under NYLL. *See Thompson*, 2015 WL 5437492, at *4.

## VIII. Count XV: Common Law Fraud and Recession

To state a claim for common law fraud under New York law, a plaintiff must plead that "'(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance.'" *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 118 (S.D.N.Y. 2009) (quoting *Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387, 400 (2d Cir. 2001)). The misrepresentation "must be factual, rather than an expression of an opinion." *Id.* (citation omitted).

As discussed above, fraud claims are subject to Rule 9(b)'s heightened pleading requirements. In this analysis, while "condition[s] of mind of a person may be averred generally . . . we must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations[,] . . . plaintiffs must allege facts that give rise to a strong inference of fraudulent intent." *Lerner*, 459 F.3d at 290 (citation omitted). This "requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 290-91. Additionally, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the

nature of his alleged participation in the fraud." *Meisel*, 651 F. Supp. 2d at 109 (quoting *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987)).

Here, the crux of Plaintiffs' argument appears to be that Defendants engaged in fraud by intentionally misrepresenting to Plaintiffs that they were independent contractors while they were, in fact, employees entitled to all the attendant benefits. FAC ¶ 235. Plaintiffs' plead that Defendants "took advantage" of Plaintiffs' unsophistication and unequal bargaining power. *Id.* ¶ 236. Further, they contend that Defendants fraudulently induced them to pay to purchase their routes and enter into and abide by the Distributor Agreements, which they allege are contracts of adhesion. *Id.* ¶¶ 237-44.

Defendants respond that Plaintiffs fail to state a claim. First, they argue that Plaintiffs fail to meet 9(b)'s pleading requirements. The Court agrees. Plaintiffs only plead generally that "Defendants" took advantage of them. They fail to identify specific allegedly fraudulent statements, who made those statements, when they were made, and why they were fraudulent. This is insufficient.

Moreover, as Defendants note, Plaintiffs do not plead any fraudulent misrepresentation of fact. Plaintiffs argue that Defendants were fraudulent in telling them that they were independent contractors. But as the complaint makes clear, Defendants do contend that Plaintiffs are independent contractors. Thus, Plaintiffs do not allege a material misrepresentation of any fact, but "merely legal conclusions that [they] urge[] the Court to reach. *See Schulman v. Herbert E. Nass & Assoc's SEP IRA Plan*, No. 10-cv-9613, 2013 WL 4860119, at *7-8 (S.D.N.Y. Sept. 11, 2013) (no fraudulent misrepresentation regarding status as independent contractor where "Defendants were explicit that [Plaintiff] was considered an independent contractor").

Finally, Defendants assert that many Plaintiffs' claims are time-barred. Fraud claims "must be interposed within the greater of six years from the date the cause of action accrued, i.e., when the plaintiff was damaged by the alleged misconduct, or two years from the time the plaintiff discovered, or with reasonable diligence could have discovered, the fraud." *Hansen v. Wwebnet, Inc.*, No. 14-cv-2263, 2015 WL 4605670, at *6 (S.D.N.Y. July 31, 2015) (citations omitted). Accordingly, claims by any Plaintiff who entered into their Distributor Agreement prior to August 25, 2011 would, in any event, be subject to dismissal.

Plaintiffs thus fail to state a claim for fraud.

## IX. Count XVIII: NYGBL Art. 33 and 13 NYCRR Part 200 New York Franchise Act

Plaintiffs contend that, if they are not deemed "employees," at the very least their purchases of distributorship routes constitute the purchases of "franchises" and they are accordingly entitled to the protections and remedies available under New York's Franchise Act. FAC ¶¶ 256, 260. They allege that Defendants did not comply with the Act and are not exempt from it. *Id.* ¶¶ 262-66.

The Franchise Act's statute of limitations "provides that an action 'shall not be maintained to enforce a liability created under this section unless brought before the expiration of three years after the act or transaction constituting the violation.'" *Kroshnyi v. U.S. Pack Courier Serv's, Inc.*, 771 F.3d 93, 102-03 (2d Cir. 2014) (quoting N.Y. Gen. Bus. Law § 691(4)).

For Plaintiffs' claims, "the 'act or transaction constituting the violation occurred when the franchises were purchased." *Id.* at 103 (collecting cases). As both parties agree, claims by any Plaintiff who purchased the distributorship route prior to August 25, 2014 are dismissed as untimely.

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. The Clerk of Court is kindly requested to terminate the motion at ECF No. 37.

**SO ORDERED.**

**Dated**:    August 30, 2018
             New York, New York

**ANDREW L. CARTER, JR.**
**United States District Judge**